UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
DEREK COPPER and LESLIE MINTO, on behalf of
themselves and all others similarly-situated,

                           Plaintiffs,

              -against-

CAVALRY STAFFING, LLC, and
ENTERPRISE HOLDINGS, INC., and
TRACY LEE HESTER ,
 in his individual and professional capacities,

                        Defendants.
-----------------------------------------------------------------X

Docket Number:

14-CV-3676 (FB)(CLP)


## MEMORANDUM OF LAW IN SUPPORT OF ENTERPRISE HOLDINGS, INC.'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT


RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11556-0926
Telephone:    (516) 357-3000
Facsimile:    (516) 357-3333

*Counsel for Defendant, Enterprise Holdings, Inc.*

Of Counsel:
    Barry I. Levy
    Kenneth A. Novikoff
    John K. Diviney
    Scott R. Green

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 2

PROCEDURAL HISTORY AND STATEMENT OF RELEVANT FACTS............................ 4

    I.      Procedural History .................................................................................. 4

    II.     Statement of Relevant Facts Alleged in the Second Amended
          Complaint.................................................................................................. 6

ARGUMENT............................................................................................................ 8

    I.      Motion to Dismiss Standard .................................................................... 8

    II.     Enterprise Does Not Qualify As A Joint Employer Under the
          FLSA or NYLL ....................................................................................... 9

          A.     Plaintiffs Fail To Allege Factual Support for Formal Control
                 by Enterprise Under the *Herman/Carter* Factors .............................. 9

          B.     Plaintiffs Fail To Allege Factual Support for Informal Control
                 by Enterprise Under *Zheng*............................................................... 12

    III.    Enterprise Joins In Co-Defendants' Motion To Dismiss Plaintiffs' Substantive
          FLSA and NYLL Claims.......................................................................... 17

CONCLUSION........................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................1, 8

*Barfield v. N.Y. C. Health & Hosps. Corp.,*
    537 F.3d 132 (2d Cir.2008) ...........................................................................................12

*Bell Atlantic v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................1, 8

*Bertuglia v. City of N.Y.,*
    839 F.Supp.2d 703 (S.D.N.Y.2012) ................................................................................7

*Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.,*
    770 F. Supp. 2d. 497 (E.D.N.Y. 2011) ............................................................................8

*Dixon v. Zabka,*
    2014 WL 6084351 (D. Conn. Nov. 13, 2014) ............................................................3, 16

*Elmer v. Fischer,*
    No. 09–CV–650, 2013 WL 66258 (W.D.N.Y. Dec. 16, 2013) ............................................7

*Gisomme v. HealthEx Corp.,*
    2014 WL 2041824 (E.D.N.Y. May 15, 2014) ...................................................................10

*Herman v. RSR Sec. Servs. Ltd.,*
    172 F.3d 132 (2d Cir. 1999) ............................................................................................9

*Hugee v. SJC Grp., Inc.,*
    2013 WL 4399226 (S.D.N.Y. Aug. 14, 2013) ..................................................3, 10, 13, 16

*Irizzary v. Catsimatidis,*
    722 F.3d at 104 ..............................................................................................................17

*Jean–Louis v. Metro. Cable Commc'ns, Inc.,*
    838 F.Supp.2d 111 (S.D.N.Y. Sept.30, 2011) ..........................................................3, 14, 16

*Lundy v. Catholic Health Sys. of Long Island, Inc.,*
    711 F.3d 106 (2nd Cir. 2013) ......................................................................................4, 17

*Nakahata v. New York-Presbyterian Healthcare Sys., Inc.,*
    2012 U.S. Dist. LEXIS 127824 (S.D.N.Y. Sept. 6, 2012) .................................................10

*Thomas v. Venditto*,
    925 F.Supp.2d 352 (E.D.N.Y.2013) .................................................................7

*Tracy v. NVR, Inc.*,
    667 F. Supp. 2d 244 (W.D.N.Y. Nov. 5, 2009) ...............................................10

*Wolman v. Catholic Health Sys. of Long Island, Inc.*,
    853 F. Supp.2d 290 (E.D.N.Y. 2012) ............................................................2, 9

*Zheng v. Liberty Apparel Company*,
    355 F.3d 69 (2d Cir. 2003) ...............................................3, 12, 13, 14, 15, 16

**Statutes**

29 U.S.C. § 203(d) ................................................................................................9

29 U.S.C. § 207(a)(1) ...........................................................................................9

Fair Labor Standards Act ("FLSA") ..................................1, 2, 4, 6, 8, 9, 10, 11, 16, 17

Fed. R. Civ. P. 12(b)(6) ............................................1, 2, 3, 4, 5, 7, 8, 9, 10, 16, 17

New York Labor Law .........................................................1, 2, 4, 8, 9, 17

## PRELIMINARY STATEMENT

Plaintiffs Derek Copper ("Copper") and Leslie Minto ("Minto") (collectively "Plaintiffs") filed this Second Amended Complaint ("Sec. Am. Com."), on behalf of themselves and all others similarly situated, pursuant to the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") alleging, *inter alia*, that Defendants Cavalry Staffing, LLC ("Cavalry"), Tracy Lee Hester ("Hester")(collectively, Cavalry Defendants") and Enterprise Holdings, Inc. ("Enterprise") failed to properly pay Plaintiffs for all hours worked. Ostensibly, Plaintiffs' theory is that Enterprise jointly employed them along with Cavalry, bringing Enterprise within the definition of an "employer" under the FLSA and NYLL. However, even after more than seven (7) months to fully investigate the merits of the claims they have alleged against Enterprise and with ample opportunity to speak with the two named Plaintiffs and eight (8) "opt-ins," Plaintiffs' third, "best" and final[1] attempt to raise claims against Enterprise falls far short of the pleading standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Bell Atlantic v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiffs' third pleading offers nothing more scant and conclusory allegations against Enterprise, again falling far short of demonstrating the requisite factors to impute wage and hour liability as Plaintiffs' employer. Though the allegations set forth facts to establish that Cavalry employed Plaintiffs (a point not challenged by the Cavalry Defendants), the Second Amended Complaint, like its two predecessors, fails to raise any plausible claims against Enterprise, requiring dismissal with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

As discussed at length below, the various formal and functional factors pointing to the existence or nonexistence of an employer-employee relationship are well-established in the

---

[1] See Minute Entry dated December 4, 2014 stating that the "plaintiff may amend the complaint one more time and shall do so by 12/12/14."

context of a wage and hour litigation and include, *inter alia*, the ability to hire, fire or discipline an employee (or recommend same), authority to set work schedules and methods/rate of pay, maintaining employment records and supervision. Not only do Plaintiffs fail to allege any facts to satisfy these requirements with respect to Enterprise, the allegations expressly state that these functions were the responsibility of the Cavalry Defendants. See Sec. Am. Com. at ¶¶ 15, 34, 35, 37. Indeed, only four (4) of the one hundred and two (102) paragraphs in the Second Amended Complaint make any allegations specific to Enterprise. See Sec. Am. Com. at ¶¶ 2, 32, 33, 36. Even within these four (4) paragraphs, they offer nothing more than vague and conclusory allegations that Enterprise, along with the Cavalry Defendants, somehow co-supervised the Plaintiffs, allegedly resulting in a joint employer relationship. *Id.* Even assuming *arguendo* that Plaintiff's characterization is accurate, those allegations are legally insufficient to hold Enterprise liable as a joint employer under the FLSA and NYLL.[2]

In reality, Plaintiffs are, or at this point should be, fully aware that Enterprise does not employ them or any members of the putative class. All are Cavalry employees. Nonetheless, they continue to pursue their claims against Enterprise in bad faith. Paragraph thirty four (34) of the Second Amended Complaint encapsulates Plaintiffs' true understanding of the limited nature of the relationship between Cavalry, Cavalry's employees and Enterprise:

> "Defendant Cavalry owns and operates a staffing agency responsible for hiring, paying and supervising employees for all of Defendant Enterprise's New York locations." See Sec. Am. Com. at ¶ 34.

---

[2] Courts apply the same analysis to determine if an entity is an "employer" under the FLSA as the NYLL. *See Wolman v. Catholic Health Sys. of Long Island, Inc.*, 853 F. Supp.2d 290, 296 n.4 (E.D.N.Y. 2012) ("The standards by which a court determines whether an entity is an 'employer' under the FLSA also govern the determination under the New York Labor Law.") (citations omitted).

Plaintiffs' own allegations point directly to nothing more than a garden variety, arms-length business relationship between a staffing company, Cavalry, and its client, Enterprise. In any such arrangement, the contracting entity will naturally be concerned about the overall performance of the subcontractor. Indeed, Enterprise employees may come into contact with Cavalry employees at the site and in the course of business operations. Staffing needs, customer preferences and other routine concerns will inevitably be discussed. However such conditions do not create an employment relationship in the absence of any formal or functional control by Enterprise over Cavalry's employees. In this regard, Plaintiffs overshoot wildly in attempting to pull Enterprise into this wage and hour dispute.

Not surprisingly, Courts within this Circuit have consistently rejected attempts to impute joint employer liability in this context. *See Zheng v. Liberty Apparel Company*, 355 F.3d 69, 75 (2d Cir. 2003) (noting that "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement."); *Jean–Louis v. Metro. Cable Commc'ns, Inc.*, 838 F.Supp.2d 111, 126–27 (S.D.N.Y. Sept.30, 2011) (finding no joint employer liability where service provider's routine quality control assessments of technicians' work did not demonstrate that service provider controlled the "day-to-day manner in which technicians provided that service."); *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, (S.D.N.Y. Aug. 14, 2013) (dismissing pursuant to Fed. R. Civ. P. 12(b)(6) claims against contractor that relied upon theory of joint employment where plaintiffs were employed by subcontractor and formal/functional control factors were insufficient); *Dixon v. Zabka*, 2014 WL 6084351, at *5 (D. Conn. Nov. 13, 2014).

3

The arms-length relationship between Cavalry and Enterprise, existing under the extremely limited and conclusory factual circumstances alleged, could never impute wage and hour liability on the part of Enterprise or its employees under the FLSA or the NYLL. Were the Court to find an employment relationship between Enterprise and the Plaintiffs, virtually every arms-length contract to provide staffing services would create a "joint employer" relationship. Accordingly, because no employment relationship has been plausibly alleged in this case, the Second Amended Complaint must be dismissed in its entirety as to Enterprise.

Finally, Enterprise joins in the Cavalry Defendants motion to dismiss the Second Amended Complaint detailing Plaintiffs' failure to state (i) viable wage statement claims, (ii) viable wage and overtime claim under *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106 (2nd Cir. 2013) and its progeny, (iii) viable minimum wage claims, and (iv) a viable "catchall" wage claim, as well as the absence of subject matter jurisdiction to issue injunctive relief. See Cavalry Defendants' Memorandum of Law, Points I through V. The Cavalry Defendants' arguments concerning Plaintiffs' failure to allege a substantive violation of the FLSA or NYLL further underscores the need for dismissal against Enterprise pursuant to Fed. R. Civ. P. 12(b)(6).

## PROCEDURAL HISTORY AND STATEMENT OF RELEVANT FACTS

**I.     Procedural History**

Plaintiff Copper and Mitchell Raife ("Raife") filed their Complaint against Cavalry, Enterprise and Hester on June 11, 2014. See Doc. No. 1. Independent review and analysis conducted by counsel for the Cavalry Defendants and Enterprise pointed to various pleading deficiencies. Accordingly, counsel filed separate letters requesting a pre-motion conference in anticipation of motions pursuant to Fed. R. Civ. P. 12(b)(6). See Doc. Nos. 26 and 27. In

response, Plaintiffs' counsel wrote the Court representing that they would "amend their complaint…to cure any of these alleged pleading defects." See Doc. No. 30.

An Amended Complaint followed on October 8, 2013. See Doc. No. 37. Without explanation, the new pleading eliminated plaintiff Raife in favor of Minto. Plaintiffs also added Enterprise "Branch Manager" Kavaliauskas as an individual defendant. See Am. Com. at ¶ 2. However, the Amended Complaint corrected none of the legal and factual shortcomings that were previously identified in Enterprise's letter to the Court. See Doc. Nos. 26 and 27. Accordingly, on October 27, 2014, counsel for Enterprise and then defendant Kavaliauskas once again requested a pre-motion conference in anticipation of motions to dismiss. See Doc. Nos. 41 and 42. Although Enterprise and Kavaliauskas' letter presented the basis for the anticipated motion in detail, arguing that the Amended Complaint failed to properly plead employer status on the part of either Enterprise or Kavaliauskas, Plaintiffs' responsive letter failed to address any of these points or otherwise explain why Enterprise and Kavaliauskas' proposed motion should not be granted. See Doc. No. 43.

On December 4, 2014, the parties attended a conference before the Honorable Frederic Block. There, the Court afforded Plaintiffs one final opportunity to amend their pleadings. See Minute Entry dated December 4, 2014. Plaintiffs filed their Second Amended Complaint on December 12, 2014. See Doc. No. 50. Without explanation, Plaintiffs removed Kavaliauskas as a named Defendant, apparently retreating from that positon, but cured none of the other previously identified pleading deficiencies. Accordingly, the parties agreed upon a briefing schedule for Defendants' respective motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). See Minute Entry dated January 12, 2015.

## II.    Statement of Relevant Facts Alleged in the Second Amended Complaint

According to the Second Amended Complaint, "Defendant Enterprise owns and operates several Enterprise Rent-A-Car locations across the United States, as well as within the State of New York, including at the JFK, LaGuardia and Islip airports where Plaintiffs worked." See Sec. Am. Com. at ¶ 32.  Plaintiff Copper alleges that he worked in the position of a Service Agent, in which capacity he was responsible for preparing Enterprise vehicles for Enterprise's customers, including interior and exterior cleaning, parking, driving and fueling of the vehicles. See Sec. Am. Com. at ¶ 3.  Plaintiff Minto alleges that he performed nearly the same duties, except that he worked in the position of a "Supervisor." See Sec. Am. Com. at ¶ 4.  Plaintiffs allege that Cavalry is a staffing agency that was responsible for hiring, paying and supervising employees for all of Defendant Enterprise's New York locations.  See Sec. Am. Com. at ¶ 34. According to Plaintiffs, Cavalry and Enterprise were their "joint employers." See Sec. Am. Com. at ¶ 34.

Allegations directed against Enterprise are extremely limited.  Again, Plaintiffs allege that "Cavalry and Enterprise were Plaintiffs' joint employers…" and that "Defendant Enterprise employed Brach [sic] Managers at Enterprise locations in New York responsible for managing and directing the day-to-day activities of all Cavalry employees working at Enterprise locations in New York, and supervising all aspects of the employees' day-to-day job duties, including those matters with respect to Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs." See Sec. Am. Com. at ¶¶ 2, 33.  Beyond that, no further detail is provided to support any of these allegations.

As to the Cavalry Defendants, Plaintiffs also allege that they exercised supervisory authority over them, but there is no attempt anywhere in the Second Amended Complaint to differentiate or to explain why or how Enterprise and Cavalry allegedly exercised joint supervisory authority.  See Am. Com. at ¶ 2.  However, Plaintiffs go on to allege a number of

other unique facts solely against the Cavalry Defendants which run contrary to their otherwise hollow position that Enterprise was a joint employer, including the authority to:

- Hire and fire Cavalry employees, see Sec Am. Com. at ¶ 15;

- Set Cavalry employees' work hours and schedules, id.;

- Control all aspects with respect to employees' pay, including paying wages; see Sec. Am. Com. at ¶¶ 34, 35;

- Control all aspects with respect to employees work assignments. See Id.

Plaintiffs did not advance any of these additional allegations against Enterprise. The balance of the allegations in the Second Amended Complaint relies on serial "group pleading" referring to the catch-all term "Defendants."[3]  See Am. Com. at ¶¶ 39-102.  However, these blanket allegations are entirely inconsistent with the alleged allocation of employment factors between the Cavalry Defendants and Enterprise outlined above.  For example, Paragraph 46 of the Second Amended Complaint alleges that Copper's "paystubs show no hourly rate of pay, Defendants compensated him at $9.50 per hour for the first forty hour of work per week."  See Sec. Am. Com. at ¶ 46.  This and all similar "group plead" allegations are irreconcilable with prior allegations that only Cavalry and Hester control all aspects of employees' pay, work hours and schedules.  See Am. Com. at ¶¶ 34, 35.  Indeed, the Second Amended Complaint fails to offer any allegations even suggesting that Enterprise was even aware of Plaintiffs' rates of pay or

---

[3] In the absence of specific allegations, Plaintiffs reliance on group pleading cannot stave off dismissal pursuant to Fed. R. Civ. P. 12(b)(6). See Bertuglia v. City of N.Y., 839 F.Supp.2d 703, 723 n. 4 (S.D.N.Y.2012) (dismissing complaint in part because allegations were made against defendants as a group, finding that "[i]t is insufficient for the plaintiffs to rely on group pleading against [these defendants] without making specific factual allegations [against them]."); Thomas v. Venditto, 925 F.Supp.2d 352, 363 (E.D.N.Y.2013) (same); Elmer v. Fischer, No. 09–CV–650, 2013 WL 66258, at *4 (W.D.N.Y. Dec. 16, 2013) (dismissing allegations against supervisors where plaintiff failed to attribute the alleged conduct to any particular defendant and therefore no personal involvement was alleged).

work schedules. All of the group plead allegations are inapplicable to Enterprise, notwithstanding Plaintiffs' use of the catch-all term "Defendants."

As to Enterprise, a fair and reasonable reading of the Second Amended Complaint points only to the some vaguely defined form of co-supervisory relationship with the Cavalry Defendants in relation to Plaintiffs. These allegations are consistent with a typical contractor/subcontractor relationship. There are no other allegations even suggesting that Enterprise "employed" Plaintiffs as defined by the FLSA and NYLL. Accordingly, Plaintiffs have failed to plausibly allege any claims against Enterprise, mandating dismissal with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

## ARGUMENT

### I. Motion to Dismiss Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must therefore contain more than "naked assertion[s] devoid of 'further factual enhancement.'" *Id.* (quoting *Bell Atlantic v. Twombly,* 550 U.S. 544, 557 (2007)). Moreover, while a court reviewing a Rule 12(b)(6) motion to dismiss must generally deem all allegations of fact in a complaint to be true, this "tenet ... is inapplicable to legal conclusions." *Id.; Twombly,* 550 U.S. at 555 (explaining that courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). A complaint has facial plausibility, only if it pleads a "set of facts sufficient to 'raise a right to relief above the speculative level.'" *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 770 F. Supp. 2d. 497, 506 (E.D.N.Y. 2011) (quoting *Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt., LLC,* 595 F. 3d 86, 91 (2d Cir. 2010).

## II.     Enterprise Does Not Qualify As A Joint Employer Under The FLSA or NYLL.

To state a claim for a violation of the FLSA, Plaintiffs must first allege that they were actually employed by Enterprise. 29 U.S.C. § 207(a)(1). After multiple attempts, Plaintiffs have not established this fundamental requirement, as they offer nothing more scant and conclusory than allegations that Enterprise jointly employed Plaintiffs along with direct employer Cavalry. As such, the allegations in the Second Amended Complaint simply never rise beyond the level of mere speculation.  Because their claims against Enterprise are not plausible, dismissal of the Second Amended Complaint is warranted under Fed. R. Civ. P. 12(b)(6).

### A.     Plaintiffs Fail To Allege Factual Support For Formal Control By Enterprise Under The *Herman/Carter* Factors.

The FLSA defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The definition of "employ" under the FLSA "includes to suffer or permit to work." *Id.* To reiterate, an employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer possessed the power to control the workers in question." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). The Courts look to the "economic reality" of the relationship instead of the common-law concept of agency. *Wolman v. Catholic Health Sys. of Long Island*, 853 F. Supp. 2d 290, 297 (E.D.N.Y. Feb. 16, 2012).  Under the "economic reality" test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *See Herman* at 139 (citing *Carter v. Dutchess Comm. College*, 735 F.2d 8, 12 (2d Cir. 1984)). "[N]o one of the four factors standing alone is dispositive. Instead, the 'economic reality' test encompasses the totality of circumstances, no one of which is exclusive." *Id.* (citations omitted.).

9

Courts have routinely dismissed FLSA claims where the allegations are nothing more than conclusory allegations designed to satisfy the economic reality test. *See Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 2012 U.S. Dist. LEXIS 127824, at *36-37 (S.D.N.Y. Sept. 6, 2012) (quoting *Sampson v. MediSys Health Network*, 2012 U.S. Dist. LEXIS 103012, at *47 (E.D.N.Y. Feb. 9, 2012); *Gisomme v. HealthEx Corp.*, 2014 WL 2041824 at *4 (E.D.N.Y. May 15, 2014); *Hugee v. SJC Grp.*, Inc., 2013 WL 4399226, (S.D.N.Y. Aug. 14, 2013) (dismissing pursuant to Fed. R. Civ. P. 12(b)(6) claims against contractor that relied upon theory of joint employment where plaintiffs were employed by subcontractor and formal/functional control factors were insufficient); *see also Tracy v. NVR, Inc.*, 667 F. Supp. 2d 244 (W.D.N.Y. Nov. 5, 2009) (plaintiffs failed to allege sufficient operational control by the executives targeted and the conclusory allegations concerning the executives' level of control over work schedules, conditions of employment, and compensation were "mere boilerplate allegations" that offered no supporting details and were "essentially a 'formulaic recitation of the elements of a cause of action' ...insufficient to raise plaintiffs' right to relief above a speculative level."). The same result is warranted here.

Here, Plaintiffs do not even muster a formulaic recitation of the necessary elements of the economic reality test, leaving no question that Enterprise did not employ the Plaintiffs. Indeed, not one of the four factors set forth in *Herman/Carter* are adequately plead against Enterprise in the Second Amended Complaint. Conspicuously absent from the pleadings are any allegations that Enterprise had the power to hire, fire or discipline Plaintiffs (or recommend same), control work schedules, determine rates or methods of payment or that it maintained employment records. Plaintiffs take their best and only shot at establishing a joint employer relationship by alleging that "Defendant Enterprise employed Brach [sic] Managers at Enterprise locations in

New York responsible for managing and directing the day-to-day activities of all Cavalry employees working at Enterprise locations in New York, and supervising all aspects of the employees' day-to-day job duties, including those matters with respect to Plaintiffs, FLSA Plaintiffs, and Rule 23 Plaintiffs." See Sec. Am. Com. at ¶ 33. A similar, but even less descriptive allegation can be found at paragraph thirty six. At best, Plaintiffs have alleged that Enterprise exercised some nebulous form of supervisory authority over them, but there are no facts alleged to demonstrate that Enterprise actually controlled the nature of conditions of their employment. In the complete absence of any control, Enterprise cannot be held liable under *Herman/Carter* and its progeny.

Plaintiffs Second Amended Complaint then goes on to undermine/contradict the otherwise scant allegations against Enterprise by offering comparatively specific allegations that point to an employment relationship with the Cavalry Defendants. Particularly, Plaintiffs allege that the Cavalry Defendants maintained control over Plaintiffs by exercising the authority to:

- Hire and fire Cavalry employees, see Sec. Am. Com. at ¶ 15;

- Set Cavalry employees' work hours and schedules, id.;

- Control all aspects with respect to employees' pay, including paying wages; see Sec. Am. Com. at ¶¶ 34, 35;

- Control all aspects with respect to employees' work assignments. See Id.

These allegations comprise (more or less) a formulaic recitation of the *Herman/Carter* factors. The absence of any such allegations against Enterprise speaks volumes, highlighting Plaintiffs complete inability to plead any facts in support of a joint employer relationship against Enterprise. Indeed, if any of the foregoing facts alleged against Cavalry applied to Enterprise, they would most certainly have been plead, especially considering that Plaintiffs have had seven

months to investigate the facts in this case. Plaintiffs' silence as to Enterprise underscores the appropriateness of a dismissal.

### B. Plaintiffs Fail To Allege Factual Support For Informal Control By Enterprise Under *Zheng*.

In the absence of formal control factors set forth under *Herman/Carter*, the Court may alternatively assess whether Enterprise exercised "functional control" over the Plaintiffs. See *Zheng v. Liberty Apparel Company*, 355 F.3d 69, 72 (2d Cir. 2003); *Barfield v. N.Y. C. Health & Hosps. Corp.*, 537 F.3d 132, 143 (2d Cir.2008). In doing so, the court considers:

> (1) whether [the purported joint employer's] premises and equipment were used for the plaintiffs' work; (2) whether the [immediate employers] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the purported joint employer's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [purported joint employer] or [its] agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for [the purported joint employer].

See *Zheng*, 355 F.Supp.2d at 72.

Given Plaintiffs' complete inability to establish any formal control factors under *Herman/Carter*, it is here where one would expect to see a host of factual allegations to show Cavalry's relationship to Enterprise was something other than an ordinary subcontracting arrangement whereby Cavalry provided staffing services at Enterprise locations. Yet, there are absolutely no allegations that would even suggest that Enterprise exercised functional control over the Plaintiffs. Once again, the necessity of dismal is self-evident.

With regard to the first factor, the Second Amended Complaint alleges that the work performed by Plaintiffs occurred on Enterprise's premises. See Sec. Am. Com. at ¶ 32. ("Defendant Enterprise owns and operates several Enterprise Rent-A-Car locations across the United States as well as within the State of New York, including at the JFK, LaGuardia, and

Central Islip airports where Plaintiffs worked."). However, there is no suggestion of how this factor could possibly translate into functional control over Plaintiffs, who have already effectively conceded that all formal aspects of their employment were controlled by Cavalry. Notably, Courts have cautioned that "'shared premises' are not 'anything close to a perfect proxy for joint employment (because they are ... perfectly consistent with a legitimate subcontracting relationship)'." *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, at *8 (S.D.N.Y. Aug. 14, 2013) (*quoting Zheng*, 355 F.3d at 72). Here, there is nothing to suggest that Plaintiffs' alleged performance of work on Enterprise's premises is anything more than a necessary condition of a legitimate, arm's length subcontracting arrangement. Additionally, Plaintiffs do not allege any use of Enterprise equipment. These allegations, or lack thereof, weigh against functional control by Enterprise.

The second factor examines whether Cavalry could shift its staffing services as a unit from one contractor to another. This factor "is relevant because a subcontractor that seeks business from a variety of contractors is less likely to be part of a subterfuge arrangement than a subcontractor that serves a single client." *See Zheng*, 355 F.3d at 72. The Second Amended Complaint makes no effort to establish that Enterprise was Cavalry's single client. Plaintiffs allege no facts that even suggest that Cavalry is anything other than an independent and autonomous company that provides services to contractors other than Enterprise. Cavalry's website certainly presents that image to the world, indicating that they provide staffing services in various industries and geographic locations.[4] Indeed, this factor weighs heavily in favor of Enterprise.

The third *Zheng* factor examines the extent to which Plaintiffs performed discrete line

---

[4]See http://www.cavalrystaffing.com/cms.php?home

jobs that were integral to the purported joint employer's process of production. *See Zheng*, 355 F.3d at 72. This factor is examined on a spectrum:

> [o]n one end of the spectrum lies piecework on a producer's premises that requires minimal training or equipment, and ... [o]n the other end of the spectrum lies work that is not part of an integrated production unit, that is not performed on a predictable schedule, and that requires specialized skills or expensive technology.

*Zheng*, 355 F.3d at 73.

Further, this factor "might apply with somewhat less vigor where, as here, the parties are engaged in providing a service rather than manufacturing a product." *Jean-Louis v. Metro. Cable Commc'ns, Inc.*, 838 F. Supp. 2d 111, 133-34 (S.D.N.Y. 2011). Here, Plaintiffs Minto and Copper allege that they were responsible for preparing Enterprise vehicles for Enterprise's customers, including interior and exterior cleaning, parking, driving and fueling of the vehicles. See Sec. Am. Com. at ¶ 3. Again, *Zheng* cautions against giving this factor any significant weight because "interpreted broadly, this factor could be said to be implicated in every subcontracting relationship, because all subcontractors perform a function that a general contractor deems 'integral' to a product or service." *Zheng*, 355 F.3d at 73. In the context of this case, Plaintiffs allegations concerning job functions are immaterial because Plaintiffs have alleged nothing other than the existence of a typical subcontracting arrangement that cannot in any way be construed as an attempt to circumvent the labor laws.

The fourth *Zheng* factor asks "whether responsibility under the contracts could pass from one subcontractor to another without material changes," *Zheng* , 355 F.3d at 72. "[T]his factor weighs in favor of a determination of joint employment when employees are tied to an entity ... rather than to an ostensible direct employer...." *Id.* Conversely, where "employees work for an entity (the purported joint employer) only to the extent that their direct employer is hired by that entity, this factor does not in any way support the determination that a joint employment

relationship exists." *Id*.  The essence of this factor is that it asks whether if the putative joint employer hired one contractor rather than another "the *same* employees would continue to do the *same* work in the *same* place." *Id*. at 74 (emphasis in original).  Here, there is absolutely no allegation even suggesting that the Plaintiffs would continue to perform the same work in the event that Enterprise ceased its subcontracting arrangement with Cavalry.  Once again, this factor weighs heavily against functional control by Enterprise.

The fifth *Zheng* factor is "the degree to which the [putative joint employer] or [its] agents supervised plaintiffs' work," Id. at 72.  This is the same inquiry as the second factor in *Herman/Carter* and, as discussed above, weighs heavily in favor of Enterprise.  To the extent that Enterprise did supervise Plaintiffs, there is nothing to suggest that it did so out of anything more than a basic concern for the overall performance of the subcontractor.  To that point, *Zheng* cautions that "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement." *Id.* at 75.  Again, there is absolutely nothing alleged here that would suggest that Enterprise did anything more than ensure performance under its subcontracting agreement with Cavalry.  Plaintiffs' own allegations indicate that all of the core supervisory functions (i.e., hire/fire authority, setting schedules, etc.) were carried out by the Cavalry Defendants alone.  Further underscoring the illogic of Plaintiffs' theory, they never explain why Enterprise would contract with a staffing agency and then burden themselves with supervisory functions when Cavalry employed supervisors like Hester to perform that task.  Indeed, logic would dictate that Enterprise is contracting for not only the services, but for direct supervision of those services by Cavalry.  On the facts alleged, the Second Amended Complaint presents an entirely implausible and illogical scenario.

The sixth and final *Zheng* factor is "whether plaintiffs worked exclusively or predominantly for [the putative joint employer]." *Id.* at 72. Plaintiffs allege no facts in support of this factor as they neither plead exclusivity nor do they identify any other employers for whom they performed work.

Measuring the Second Amended Complaint against either the four factor *Herman/Carter* test or the six factor *Zheng* test demonstrates that it falls far short of the standards necessary to impute liability to Enterprise as a joint employer. Weeding through the vague and conclusory allegations, there is nothing to suggest more than a garden variety, arms-length business relationship between a staffing company, Cavalry, and its client, Enterprise. Not surprisingly, Courts within this Circuit have consistently rejected attempts to impute joint employer liability in this context. See *Id.* at 75 (noting that "supervision with respect to contractual warranties of quality and time of delivery has no bearing on the joint employment inquiry, as such supervision is perfectly consistent with a typical, legitimate subcontracting arrangement."); *Jean–Louis v. Metro. Cable Commc'ns, Inc.*, 838 F.Supp.2d 111, 126–27 (S.D.N.Y. Sept.30, 2011) (finding no joint employer liability where service provider's routine quality control assessments of technicians' work did not demonstrate that service provider controlled the "day-to-day manner in which technicians provided that service."); *Hugee v. SJC Grp., Inc.*, 2013 WL 4399226, (S.D.N.Y. Aug. 14, 2013) (dismissing pursuant to Fed. R. Civ. P. 12(b)(6) claims against contractor that relied upon theory of joint employment where plaintiffs were employed by subcontractor and formal/functional control factors were insufficient); *Dixon v. Zabka*, 2014 WL 6084351, at *5 (D. Conn. Nov. 13, 2014).

Though the Second Circuit has treated the concept of employment for FLSA purposes as a "flexible concept," Plaintiffs attempt to stretch joint employer liability goes well beyond its

16

possible limits.  See *Irizzary v. Catsimatidis*, 722 F.3d at 104.  Plaintiffs cannot overcome the reality that they were only employees of Cavalry.  Accordingly, their claims against Enterprise should be dismissed in their entirety.

**III.   Enterprise Joins In Co-Defendants' Motion To Dismiss Plaintiffs' Substantive FLSA and NYLL Claims.**

Enterprise joins in the Cavalry Defendants motion to dismiss the Second Amended Complaint detailing Plaintiffs' failure to state (i) viable wage statement claims, (ii) viable wage and overtime claim under *Lundy* and its progeny, (iii) viable minimum wage claims, and (iv) a viable "catchall" wage claim, as well as the absence of subject matter jurisdiction to issue injunctive relief.  See Cavalry Defendants' Memorandum of Law, Points I through V.  The Cavalry Defendants' arguments concerning Plaintiffs' failure to allege a substantive violation of the FLSA or NYLL further underscores the need for dismissal against Enterprise pursuant to Fed. R. Civ. P. 12(b)(6).

## CONCLUSION

For the reasons discussed within this memorandum of law and the memorandum of law submitted by the Cavalry Defendants, Enterprise respectfully requests that the Court dismiss Plaintiffs' claims against it in their entirety.  In light of Plaintiffs' two prior attempts to advance their claims, along with the Court's Order indicating that the most recent version of the complaint shall be Plaintiffs' final attempt to amend, Enterprise also requests that all claims be dismissed with prejudice.

Dated: Uniondale, New York
       January 30, 2015

                                        Respectfully submitted,

                                        RIVKIN RADLER LLP

                                        By:    /s/ *Barry I. Levy*
                                                Barry I. Levy
                                                Kenneth A. Novikoff
                                                John K. Diviney
                                                Scott R. Green
                                        926 RXR Plaza
                                        Uniondale, New York 11556-0926
                                        Telephone:    (516) 357-3000
                                        Facsimile:    (516) 357-3333
                                        barry.levy@rivkin.com

                                        *Counsel for Defendant, Enterprise Holdings, Inc.*

18

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2015, a true copy of Defendant's Notice of Motion to Dismiss and Supporting Memorandum of Law was served on counsel for Plaintiffs by e-mail and Federal Express at the following addresses:

Jeffrey R. Maguire, Esq.

    jrm@employmentlawyernewyork.com
    Jeffrey R. Maguire, Esq.
    Borrelli & Associates, P.L.L.C.
    1010 Northern Boulevard, Suite 328
    Great Neck, New York  11021

Dated:  Uniondale, New York
       January 30, 2015

                By:___/s/ _Barry I. Levy_____
                    Barry I. Levy (BL 2190)

3107929 v3