```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
DEREK COPPER and LESLIE MINTO,
on behalf of themselves and all others
similarly situated,                                    **MEMORANDUM AND ORDER**
                                                       14-CV-3676 (FB) (CLP)
                Plaintiffs,

        -against-

CAVALRY STAFFING, LLC,
ENTERPRISE HOLDINGS, INC., and
TRACY LEE HESTER, in his individual
and professional capacities,

                Defendants.

---------------------------------------------------x
```

*Appearances:*
*For the Plaintiffs:*
JEFFREY MAGUIRE
ALEXANDER T. COLEMAN
MICHAEL J. BORRELLI
Borelli & Associates, PLLC
1010 Northern Boulevard
Great Neck, NY 11021

*For Defendants Cavalry and Hester:*
KATHLEEN M. CAMINITI
Fisher & Phillips, LLP
430 Mountain Avenue
Murray Hill, NJ 07974

*For Defendant Enterprise*:
BARRY I. LEVY
JOHN K. DIVINEY
KENNETH A. NOVIKOFF
SCOTT GREEN
Rivkin Radler, LLP
929 RXR Plaza
Uniondale, NY 11556

**BLOCK, Senior District Judge:**

Derek Copper ("Copper") and Leslie Minto ("Minto") (collectively, "plaintiffs") filed this action under the Fair Labor Standards Act and New York Labor Law against Cavalry Staffing, LLC ("Cavalry"), Tracy Hester ("Hester"), and Enterprise Holdings, Inc. ("Enterprise") (sometimes collectively, "defendants"). Enterprise moves to dismiss the complaint because it was not plaintiffs' employer. Alternatively, Enterprise joins Cavalry and Hester in moving to dismiss the complaint in its entirety because it fails to state a claim pursuant to FRCP 12(b)(6). Finally, plaintiffs move for conditional certification of a collective action. For the reasons that follow, Enterprise's motion to dismiss is DENIED, defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART, and plaintiffs' motion to conditionally certify the collective action is GRANTED.

**I.**

The following facts are derived from plaintiffs' Second Amended Complaint.

Enterprise owns and operates several Enterprise Rent-A-Car locations across the United States. It contracted with Cavalry to provide staffing for its New York State locations. As the Key Account Manager for Cavalry, Hester was responsible for hiring, firing, and setting the work schedules for Cavalry employees. Cavalry employed plaintiffs to staff Enterprise's locations at the JFK, LaGuardia, and Central Islip airports.

Copper and Minto were Cavalry employees staffed at Enterprise locations. Their

primary duties were to clean, wash, and prepare Enterprise's vehicles for customers. They also interacted with Enterprise customers in the showrooms, and would pick up and drop off customers at various locations. As a Supervisor, Minto had the additional responsibilities of record-keeping, reporting to managers, and demonstrating to service agents the proper way to clean the vehicles.

Plaintiffs assert that they, and others similarly situated, were regularly required to work in excess of forty hours per week, yet received zero compensation for those additional hours. Accordingly, they bring claims arising under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") for unpaid overtime, minimum-wage violations, and failure to furnish proper wage statements.

## II.

**A. Whether Enterprise was Plaintiffs' Employer**

Under the FLSA,[1] the term "employer" is defined as including "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The statute "offers little guidance on whether a given individual is or is not an employer." *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). Courts have accordingly looked to the "economic reality" presented by each case. *Id.* (citing

---

[1] "The standards by which a court determines whether an entity is an 'employer' under the FLSA also govern that determination under the New York labor law." *Wolman v. Catholic Health Sys. of Long Island*, 853 F. Supp. 2d 290, 296 n.4 (E.D.N.Y. 2012).

3

*Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961)). Under the economic-reality test, courts consider "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Id.* (quoting *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d. Cir. 1984)).

Alternatively, joint-employer status is found when the alleged employer had "functional control" over the workers. *Zheng v. Liberty Apparel Co.*, 355 F.3d 61, 72 (2d Cir. 2003). To assess whether Enterprise had functional control over plaintiffs, the Court may consider: (1) whether Enterprise's premises and equipment were used for plaintiffs' work; (2) whether Cavalry had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to Enterprise's process of production; (4) whether responsibility under the staffing contract could pass from Cavalry to another agency without material changes; (5) the degree to which Enterprise supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for Enterprise. *See id.* This is a highly factual inquiry that is generally not decided as a matter of law. *See Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 143-44 (2d Cir. 2008) ("Because of the fact-intensive character of a determination of joint employment, we rarely have occasion to review determinations made as a matter of law on an award of summary judgment.");

*Zheng*, 355 F.3d at 76 n.13 ("The fact-intensive character of the joint employment inquiry is highlighted by the fact that two of the three leading cases in this circuit were appeals from judgments following bench trials. In the third case, we decided that genuine issues of material fact *precluded* summary judgment on the ultimate issue of FLSA coverage." (citations omitted)).

Plaintiffs have adequately pled that Enterprise exercised functional control over them as a joint employer. They alleged that all of the work they performed, including the washing of Enterprise's vehicles, was done exclusively on Enterprise's premises. Plaintiffs also aver that Enterprise hired branch managers to supervise its New York locations. According to the complaint, the branch mangers were "responsible for managing and directing the day-to-day activities of all Cavalry employees" and "supervising all aspects of the employees' day-do-day job duties." Second Amended Complaint ¶ 33. Additionally, Cavalry staffed plaintiffs to work exclusively for Enterprise.

Accepting as true all of the allegations in the Second Amended Complaint and drawing all inferences in plaintiffs' favor, *Weixel v. Board of Educ.*, 287 F.3d 138, 145 (2d Cir. 2002), the complaint sufficiently alleges Enterprise was plaintiffs' joint employer. Enterprise's motion to dismiss is DENIED.

**B. Defendants' Joint Motion to Dismiss**

The various claims in the Second Amended Complaint are addressed in turn.

*1. Overtime Claims*

The FLSA and NYLL require employers to compensate employees "at a rate not less than one and one-half the regular rate" for those hours worked in excess of forty hours. 29 U.S.C. § 207(a).[2] To survive a 12(b)(6) motion on an overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013). "Determining whether a plausible claim has been pled is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

The First and Third claims in the Second Amended Complaint allege that defendants failed to pay plaintiffs for the time they worked in excess of forty hours in any given week. *See* Second Amended Complaint ¶¶ 42, 47, 55, 58. Defendants argue that plaintiffs' allegations are too broad to create a plausible inference to maintain an overtime claim. Plaintiffs, however, provide two workweeks as representative examples in which Copper was unpaid for hours he worked in excess of forty. Defendants attempt to defeat

---

[2] Overtime claims under the FLSA and NYLL are subject to the same standards. *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 89 & n.5 (2d Cir. 2013).

these allegations by appending to their motion pay stubs and wage statements that indicate plaintiffs worked fewer hours than alleged and that plaintiffs were compensated for each hour worked. Consideration of this extrinsic evidence provides little probative value for this claim because plaintiffs plausibly allege that defendants did not account for hours they worked "off-the-clock;" therefore, these unaccounted-for hours would not appear in the wage statements furnished by defendants.

Accordingly, defendants' motion to dismiss is DENIED as to plaintiffs' First and Third claims.

*2. Minimum-Wage Claims*

The Second, Fourth, and Fifth claims in the Second Amended Complaint allege that defendants failed to pay plaintiffs the minimum wage as required by the FLSA and NYLL. Specifically, plaintiffs allege that because they received zero compensation for hours worked in excess of forty hours in any given workweek, they were not compensated the minimum wage (or any wage) for those hours. Defendants move to dismiss these claims because they argue that the proper method of calculating plaintiffs' rate of pay for minimum-wage purposes is to divide their total remuneration by the number of hours worked in a given week. Plaintiffs effectively concede that if the rate of pay is calculated as such, they were compensated at least the minimum wage.

The Court agrees with defendants' method of calculating an employee's rate of pay. Under the FLSA, "[t]he regular hourly rate of pay of an employee is determined by

7

dividing his total remuneration for employment . . . in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." 29 C.F.R. § 778.109; *see also Johnson v. Equinox Holdings, Inc.*, No. 13-CV-6313, 2014 WL 3058438 at *3 (S.D.N.Y. July 2, 2014) (rejecting plaintiffs' argument that failure to compensate for off-the-clock hours resulted in a minimum-wage violation when average hourly wage did not fall below the minimum wage).

Plaintiffs cite several cases for the proposition that there is a rebuttable presumption that the payment of a weekly salary is compensation for only the first forty hours of an employee's workweek. *See Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012); *Guallpa v. N.Y. Pro Signs, Inc.*, No. 11-CV-3133, 2014 WL 2200393 at *3 (S.D.N.Y. May 27, 2014); *Amaya v. Superior Tile & Granite Corp.*, No. 10-CV-4525, 2012 WL 130425 at *9 (S.D.N.Y. Jan. 17, 2012). However, these cases are inapposite because they applied the presumption as a matter of contract interpretation to determine whether the employer and employee had agreed that hours worked in excess of forty would be paid at a premium or included in the weekly rate of pay. In none did the court find a minimum-wage violation by calculating the rate of pay with respect to only those hours worked in excess of forty.

Plaintiffs also assert that the language of NYLL's minimum-wage provision is broader than the FLSA. Specifically, that provision states: "Every employer shall pay to each of its employees for *each hour worked* a wage of not less than . . . ." NYLL § 652

(emphasis added). But the plain language of this statute does not compel plaintiffs' interpretation—that courts must look to each individual hour worked to determine whether the employee was compensated the minimum wage for that specific hour. The phrase "each hour worked" is best interpreted as mandating an average rate of pay on a *per hour* basis: this is calculated by dividing the employee's total remuneration by the total number of hours worked. *See Johnson*, 2014 WL 3058438 at *3. Moreover, § 652 cross-references the FLSA's minimum-wage provision to ensure that New York's minimum wage is at least on par with the federal rate. *Id.* § 652(1). It is unlikely the New York statute was intended to calculate minimum wage in a manner different from the FLSA. *Cf. Casci v. Nat'l Fin. Network, LLC*, No. 13-CV-1669, 2015 WL 94229 at *4 (E.D.N.Y. Jan. 7, 2015) (applying the same standard to FLSA and NYLL minimum-wage claims).

Accordingly, defendants' motion to dismiss is GRANTED with respect to plaintiffs' Second, Fourth, and Fifth claims based on minimum-wage violations.

*3. Failure to Furnish Wage Statements*

In 2010, the New York State Legislature passed the Wage Theft Prevention Act (the "WTPA") in an effort "to expand the rights of employees to seek civil and criminal avenues of remedy" against their employers who fail to comply with the labor law. *N.Y. Sponsors. Memo., 2010 S.B. 8380*, 233rd Leg., 2010 Reg. Sess. (Oct. 28, 2010). The WTPA amended, among other provisions, NYLL § 195(3) to require employers to "furnish each employee with a statement with every payment of wages" that lists various

categories of information, including, "the number of overtime hours worked." NYLL § 195(3).³ An employer's failure to comply with § 195(3) results in a civil penalty of $250 for each violation up to $5,000 per employee. *See* NYLL § 198(1-d).

The plaintiffs' Sixth claim alleges defendants failed to comply with § 195(3) because defendants "failed to furnish . . . accurate wage statements." Second Amended Complaint ¶ 99. The wage statements appended to defendants' motion to dismiss demonstrate that they furnished documentation containing the categories required by the statute.⁴ The wage statements separately list the number of regular and overtime hours

---

³ Section 195(3) provides in full:

Every employer shall . . . furnish each employee with a statement with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages. For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked. For all employees paid a piece rate, the statement shall include the applicable piece rate or rates of pay and number of pieces completed at each piece rate. Upon the request of an employee, an employer shall furnish an explanation in writing of how such wages were computed[.]

⁴ By referring to the completeness and inaccuracy of the wage statements in their complaint, plaintiffs relied on these documents in fashioning their Sixth claim. *See* Second Amended Complaint ¶ 99 ("Defendants willfully failed to furnish Plaintiffs . . . with accurate wage statements containing the criteria required

worked and the rate of compensation for each. But plaintiffs argue that these wage statements do not satisfy the statute's requirements because defendants did not account for overtime hours plaintiffs allegedly worked off-the-clock. Therefore, according to the complaint, the furnished wage statements do not *accurately* state "the number of overtime hours worked." NYLL § 195(3).

At oral argument, defendants argued for the first time that § 195(3) is merely a notice and record-keeping provision. According to defendants, the wage statements' inclusion of plaintiffs' overtime hours for which they were being compensated—regardless of whether off-the-clock hours are accounted for—satisfied § 195(3) because plaintiffs were notified of what compensation defendants believed they were entitled to and provided the basis for the calculation of their wages. Under defendants' interpretation, the statutory scheme contemplates that even though an inaccurate wage statement can satisfy § 195(3), underpaid employees are still protected by the substantive minimum and overtime wage provisions of the NYLL.

Whether § 195(3) requires an accurate statement of the number of overtime hours an employee actually worked—rather than just a statement of the overtime hours for

---

under the NYLL."). The Court may accordingly consider the wage statements attached to defendants' motion to dismiss without converting it to a motion for summary judgment. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("[A] plaintiff's *reliance* on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion.").

which the employee is being paid—appears to be a matter of first impression.[5] The New York Court of Appeals has instructed that in matters of statutory interpretation, courts should consider "the text of a provision [a]s the clearest indicator of legislative intent." *See Albany Law Sch. v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 19 N.Y.3d 106, 120 (2012) (internal quotation marks omitted). Courts should also "inquire into the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history." *Id.* (internal quotation marks omitted). Both the statutory text and remedial purpose of the WTPA persuade the Court that plaintiffs have sufficiently pled a claim under § 195(3).

The plain language of § 195(3) requires wage statements furnished to employees to include a statement of "the number of overtime hours *worked*." NYLL § 195(3) (emphasis added). Accordingly, the "number of overtime hours" that appears on the wage statement should include every hour actually "worked" by the employee. If, as defendants argue, the wage statements serve only to provide notice to employees of the basis of their compensation—and thus even an inaccurate statement of hours worked

---

[5]Although some courts have stated that § 195(3) requires furnishing of "accurate wage statements," they have done so without analysis and in cases in which the proper interpretation of the statute was not at issue. *See, e.g.*, *Dominguez v. B S Supermarket, Inc.*, No. 13-CV-7247, 2015 WL 1439880, at *2 (E.D.N.Y. Mar. 27, 2015) (order adopting magistrate judge's report and recommendation that stated: "[P]laintiffs brings a claim pursuant to Section 195(3) . . . , which requires employers to furnish employees with accurate wage statements."); *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-CV-5164, 2015 WL 739943, at *2 (E.D.N.Y. Feb. 20, 2015) (same).

could satisfy § 195(3)—the statute would likely read "the number of overtime hours being compensated," not "the number of overtime hours worked." Plaintiffs have therefore adequately pled a § 195(3) violation by alleging that defendants "maintained inaccurate time records" and paid them "according to these inaccurate time records, *and not the hours . . . actually worked*."[6] Second Amended Complaint ¶ 48 (emphasis added).

The legislative history of the WTPA bolsters this interpretation. The WTPA's sponsors justified the legislation on the basis that "a large number of employees are earning less than minimum wage and others are being paid less than their correct wage." *N.Y. Sponsors. Memo., 2010 S.B. 8380*, 233rd Leg., 2010 Reg. Sess. (Oct. 28, 2010). The legislators were concerned that "[m]any employees are also not all receiving the appropriate amount of overtime compensation and many employers are failing to adequately inform their employees of their wages and how they are calculated in a language they can comprehend." *Id.* In an effort to combat these abuses, the WTPA was drafted to "dramatically" increase the penalties against employers "in order to far better protect workers' rights and interests." *Id.* The dramatic expansion of civil penalties and the WTPA's remedial purpose convince the Court that the New York legislature did not intend for inaccurate statements of overtime hours to satisfy the WTPA's wage-notice

---

[6] To counter this assertion, defendants submitted exhibits relating to the sophistication of the clock-in/clock-out system they utilized. But because the Second Amended Complaint does not rely on these documents, the Court has not considered them with respect to the present 12(b)(6) motion. *See Chambers*, 282 F.3d at 153.

requirements.

As an additional note, the Court need not decide today whether § 195(3) contains an implicit good-faith exception that would exempt an employer from civil penalties when there are inaccuracies in wage statements despite the employer's good-faith efforts to properly account for an employee's overtime hours. To the extent such an exception exists, defendants have not raised it in their motion to dismiss; moreover, plaintiffs have sufficiently pled conduct to overcome it. As noted above, the complaint alleges defendants "required" plaintiffs to work in excess of forty hours per week yet consistently failed to compensate them for overtime.

For the foregoing reasons, defendants' motion to dismiss is DENIED with respect to plaintiffs' Sixth claim.

**C. Plaintiff's Motion to Conditionally Certify a Collective Action**

The FLSA allows a plaintiff to sue on behalf of "other employees similarly situated," provided that the other employees give their consent in writing. 29 U.S.C. § 216(b). In this context, "similarly situated" means that the named plaintiff and the potential opt-in plaintiffs "together were victims of a common policy or plan that violated the law." *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (Sotomayor, J.) (collecting cases).

Certification of a collective action is a two-step process. "The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who

may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010). If the Court makes such a determination, the potential plaintiffs must be given notice of the action and an opportunity to opt in. Because the determination is only preliminary and must necessarily be made early in the proceedings, the first step imposes on the named plaintiff the minimal burden of making a "modest factual showing" based on the pleadings and affidavits. *Id.*

Once the opt-in period is over and discovery is completed, the court—usually at the defendant's instance—applies "a more heightened scrutiny" to the question. *Jacobs v. N.Y. Foundling Hosp.*, 483 F. Supp. 2d 251, 265 (E.D.N.Y. 2007). If the facts developed during discovery refute the step-one determination, the court will decertify the collective action and only the named plaintiffs' claims will proceed. *See id.*

Plaintiffs move to conditionally certify a collective action at the first, preliminary step. In addition to the allegations made in the complaint, they submit affidavits from five Cavalry employees who worked at Enterprise locations. Each affiant claims he regularly worked in excess of forty hours per week yet were never paid for hours worked in excess of forty. The affidavits also state that the employees were not furnished with pay stubs that accurately reflected their hours worked. Defendants argue that these affidavits are not sufficient to warrant conditional certification because they are "boilerplate" and unsupported. Indeed, the Court will not conditionally certify a collective action based

15

solely on "unsupported assertions," *Myers*, 624 F.3d at 555; however, plaintiffs may carry their modest burden "by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008); *see also Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 452 (E.D.N.Y. 2014) ("This determination is typically 'based on the pleadings, affidavits and declarations' submitted by the plaintiff[s].").

Plaintiffs' affidavits satisfy the Court that there are other similarly situated employees with potential FLSA claims against defendants. That is all that is required to warrant conditional certification. Plaintiffs' motion to conditionally certify the collective action is GRANTED.

Defendants advanced several objections to the proposed notice to potential plaintiffs. The parties are directed to confer to agree upon appropriate notice procedures and shall submit a joint proposed order for the Court's approval by October 9, 2015. Should the parties be unable to agree, they shall submit separate proposed orders that highlight for the Court the areas of disagreement.

## III.

In sum, Enterprise's motion to dismiss is DENIED. Defendants' motion to dismiss with respect to the Second Amended Complaint's Second, Fourth, and Fifth claims is GRANTED IN PART, and otherwise DENIED IN PART. Plaintiffs' motion to

conditionally certify a collective action is GRANTED.

**SO ORDERED.**

/S/ Frederic Block
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
September 25, 2015