UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DEREK COPPER, et al.,

                            **Plaintiffs,**

           **-against-**

CAVALRY STAFFING, LLC, et al.,

                            **Defendants.**
-------------------------------------------------------------------x
BORRELLI & ASSOCIATES, P.L.L.C.,

                      **Third-party Plaintiff,**

           **-against-**

FLEET STAFF, INC. and RONALD E.
HEINEMAN,

                    **Third-party Defendants.**
-------------------------------------------------------------------x

**REPORT AND
RECOMMENDATION**

**14-CV-3676 (FB)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

On April 2, 2020, third-party plaintiff Borrelli & Associates, P.L.L.C. ("B&A") filed a

motion for a default judgment against third-party defendants Fleet Staff, Inc. ("Fleet") and

Ronald E. Heineman (collectively, "third-party defendants"). See Motion for Default

Judgment (Apr. 2, 2020) ("B&A Mot."), Electronic Case Filing ("ECF") Docket Entry ("DE")

#280. The Honorable Frederic Block, the District Judge to whom this case is assigned,

referred the motion to the undersigned magistrate judge to report and recommend. See

Electronic Order Referring (Apr. 3, 2020). For the reasons set forth below, this Court

recommends that B&A's motion for a default judgment be denied and that its third-party

complaint be dismissed for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal

Rules of Civil Procedure.

## BACKGROUND

Fleet and defendant Cavalry Staffing, Inc. ("Cavalry") are staffing companies that placed workers as service agents and service agent supervisors at Enterprise Rent-A-Car locations throughout New York state.  See Third Party Complaint (Dec. 5, 2019) ("Third Party Compl.") ¶ 11, DE #271.   On February 7, 2014, Cavalry sold all of its assets to Fleet pursuant to a Purchase Agreement, which provided that Cavalry became a "division of Fleetstaff." B&A Mot., Ex. E (the "Asset Sale Agreement") ¶ 2, DE #280-6; see Third Party Compl. ¶ 12. Under the terms of the Asset Sale Agreement, David Stanley, the former President and sole shareholder of Cavalry, became the Executive Vice President of the new Cavalry division at Fleet.   See Third Party Compl. ¶ 14; Asset Sale Agreement ¶ 3.

On June 11, 2014, plaintiffs filed the instant collective action under the Fair Labor Standards Act ("FLSA") and putative class action under New York Labor Law ("NYLL") against Cavalry and Enterprise Holdings, Inc. (collectively, "defendants"),[1] for failure to pay overtime and minimum wages to nonmanagerial employees.   See Complaint (June 11, 2014), DE #1.   On September 25, 2015, Judge Block granted defendants' motion to dismiss the minimum wage claims, denied the motion to dismiss the overtime claims, and conditionally certified a collective action under the FLSA.   See Memorandum & Order (Sept. 25, 2015), DE #78.

---

[1] The Complaint alleged that Enterprise Holdings, Inc. owned and operated several Enterprise Rent-A-Car locations throughout New York State.  See Complaint (June 11, 2014) ¶ 11, DE #1.   The original pleading also named an individual defendant, a Cavalry employee who acted as plaintiffs' supervisor.  See id. ¶ 13.   Amended pleadings filed later that year added and then dropped a second individual defendant.  See Amended Complaint (Oct. 8, 2014), DE #37; Second Amended Complaint (Dec. 12, 2014), DE #50.

On December 14, 2015, while this litigation was ongoing, Cavalry and Fleet executed an amendment to the Asset Sale Agreement.   Third Party Compl. ¶ 16.   Pursuant to the amendment, the parties identified outstanding obligations owed by Cavalry and incurred prior to the asset sale, including potential liability from the instant lawsuit.   See B&A Mot., Ex. F (the "Amendment"), DE #280-7.[2]   Relevant to this action, the amendment provides that:

> The parties specifically agree upon a split liability as it relates to a case pending in the US District Court Eastern District of New York (1:14-cv-03676-FB-CLP Copper et al v. Cavalry Staffing, LLC et al). This shall be so for all costs incurred to date and those going forward. Buyer will be entitled to offset for past costs up to the effective date of this Amendment as stated above, and for future Earnout payments based upon the 50/50 split of costs associated with that lawsuit.

Amendment ¶ 2.

On October 18, 2016, following a private mediation, plaintiffs moved for preliminary approval of a collective and class settlement, in the maximum amount of $875,000, to be fully funded by Cavalry.   See Motion to Certify Class (Oct. 18, 2016), DE #250; Settlement Agreement and Release (the "Settlement Agreement") ¶ 2.7, DE #250-3.   Judge Block granted preliminary approval of the settlement on September 8, 2017.   See Order (Sept. 8, 2017), DE #252.   On January 9, 2018, plaintiffs moved for final approval of the class settlement.   See Motion to Certify Class (Jan. 9, 2018), DE #253.

Shortly thereafter, on February 5, 2018, counsel for Cavalry, Fisher Phillips, LLP ("Fisher Phillips"), moved to substitute another firm as counsel because the Fisher Phillips firm had "a potential conflict of interest in continued representation of Cavalry as a result of Fisher

---

[2] The Amendment is also attached to the Third Party Complaint.   See DE #271-1.

3

Philip's representation of another client whose interests are adverse to Cavalry's interests" – an

apparent reference to the firm's representation of Fleet.   See Third Party Compl. ¶ 20;

Affidavit of Kathleen McLeod Caminiti (Feb. 5, 2018) ¶ 6, DE #254-2; Declaration of Jeffrey

R. Maguire, Esq. (Feb. 8, 2019) ("2/8/19 Maguire Decl.") ¶ 8, DE #261-5.   The substitution

was approved by Judge Block.   See Minute Entry (Feb. 9, 2018); Electronic Order (Feb. 9,

2018).

Days later, on February 12, 2018, Judge Block approved the settlement and entered final

judgment.   See Order (Feb. 12, 2018), DE #255.   Under the Settlement Agreement, Cavalry

was required to pay $459,816.17 in total by April 13, 2018.   See Declaration in Support of

Default Judgment (Apr. 2, 2020) ("B&A Decl.") ¶ 18, DE #280-1; 2/8/19 Maguire Decl. ¶ 5.

On April 16, 2018, after the case was closed, Cavalry notified the Court that it was unable to

make a payment to fund the settlement on April 13, 2018, and requested a conference.   See

Letter (Apr. 16, 2018), DE #256.   In response, plaintiffs advised Judge Block that in addition

to the April 13th missed final payment, and unbeknownst to plaintiffs' counsel at the time,

Cavalry had also missed the initial deposit of $300,000 to fund the settlement, due on December

11, 2017, prior to the Court's final approval of the settlement.   See Letter Motion for Pre

Motion Conference (Apr. 16, 2018) at 2, DE #257.

On June 28, 2018, Cavalry deposited $230,000.00 – "50% of the total liability" - into

the settlement fund.   See Letter Motion to Adjourn Conference and Status Report (Aug. 8,

2018) at 2, DE #260.   At a conference held before Judge Block on August 29, 2018, plaintiffs

proposed that the $230,000.00 in the settlement fund be distributed to the class members to pay

their claims in full, and that the remaining amount would be used to pay counsel's litigation

4

costs, a portion of attorneys' fees, and a portion of the administration fees.[3]   See 2/8/19

Maguire Decl. ¶ 7.   Judge Block approved that distribution.   See id.; Minute Entry dated

8/29/18.

On February 8, 2019, plaintiffs filed a post-judgment enforcement motion to compel

Fleet, as a non-party that is in possession of money in which the judgment debtor has an

interest, to turn over to plaintiffs the outstanding balance due on the settlement, pursuant to the

Amendment to the Asset Sale Agreement.   See Motion to Enforce Judgment (Feb. 8, 2019),

DE #261.   Plaintiffs' counsel noted in the motion that prior to Cavalry's default under the

Settlement Agreement, counsel was never informed that Cavalry had sold its assets to Fleet, that

Fleet and Cavalry had agreed to split the liability in this action, or that Fisher Phillips

represented both Fleet and Cavalry.   See 2/8/19 Maguire Decl. ¶¶ 8, 9.   Counsel further

pointed out that the Settlement Agreement had been signed by David Stanley on behalf of

Cavalry, which, according to the Asset Sale Agreement, was no longer in operation at that time

except as a division of Fleet.   See id. ¶ 9.

On September 26, 2019, Judge Block approved the parties' agreement to assign to B&A

Cavalry's breach of contract claim against Fleet (for breach of the Amendment), "thereby

permitting B&A to stand in the shoes of Cavalry with respect to Fleet . . . ."   B&A Decl. ¶ 21;

see Order (Sept. 26, 2019) at 2, DE #268.   Shortly thereafter, B&A submitted a letter

proposing to file a third-party complaint against Fleet and its owner Ronald Heineman, asserting

---

[3] However, because the settlement administrator had miscalculated the amount owed, $5,181.84 was later paid back by B&A to the settlement administrator to satisfy the amount owed to participating class members.   See 2/8/19 Maguire Decl. ¶ 7; Order (Sept. 26, 2019) at 2, DE #268.

the assigned breach of contract claims.  See Status Report (Oct. 28, 2019), DE #269.  Judge

Block authorized the filing of a third-party complaint, with the following caveat: the Court was

not "expressing any opinion as to the merits of the claim[.]"  Electronic Order (Oct. 29, 2019)

("10/29/19 Order").

On December 5, 2019, B&A, "stand[ing] in the shoes of Cavalry[,]" Third Party

Compl. ¶ 2, filed the Third Party Complaint, in which it alleges that Fleet and its owner

breached the terms of the Amendment to the Asset Sale Agreement by failing to pay Cavalry or

the claims administrator $229,816.77, the remaining balance owed pursuant to the Settlement

Agreement, see generally Third Party Compl.  Following third-party defendants' failure to

appear or otherwise defend, B&A moved for entry of a default judgment, and Judge Block

referred the motion to the undersigned to report and recommend on both liability and damages.

By Order dated April 30, 2020, this Court directed B&A to show cause why, under

Second Circuit caselaw, its motion for default judgment should not be denied for failure to

demonstrate that its breach of contract claim entitles it to indemnification for liability under the

FLSA.  See Order to Show Cause (Apr. 30, 2020), DE #281.  B&A timely responded on May

28, 2020.  See Response to Order to Show Cause (May 28, 2020) ("B&A Resp."), DE #284.

## DISCUSSION

### I.      Default Judgment Standard

Following the Clerk's notation of a defendant's default, entry of a default judgment is

appropriate provided the pleading properly states a claim upon which relief can be granted.

See, e.g., Trs. of the Plumbers Local Union No. 1 Welfare Fund v. Axiom Plumbing &

Hearing Corp., No. 08-CV-116 (FB)(JMA), 2009 WL 234348, at *1 (E.D.N.Y. Jan. 30,

2009).   If the allegations properly state a claim, the plaintiff must then establish damages.   See

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992).

A defendant's "default is deemed to constitute a concession of all well pleaded

allegations of liability[.]"   Id.   A default does not, however, establish "that the alleged facts

constitute a valid cause of action[.]"   TAGC Mgmt., LLC v. Lehman, Lee & Xu Ltd., 536

F.App'x 45, 46 (2d Cir. 2013) (internal quotation marks omitted).   Indeed, "before a district

court enters a default judgment, it must determine whether the allegations in a complaint

establish the defendant's liability as a matter of law."   Taizhou Zhongneng Imp. & Exp. Co.,

Ltd v. Koutsobinas, 509 F.App'x 54, 56 (2d Cir. 2013) (citing Finkel v. Romanowicz, 577

F.3d 79, 84 (2d Cir. 2009)).   To the extent that the plaintiff's allegations are inadequate, "a

district court has discretion under Rule 55(b)(2) . . . to require proof of necessary facts" to

satisfy itself that there is "a valid cause of action[.]"   Au Bon Pain Corp. v. Artect, Inc., 653

F.2d 61, 65 (2d Cir. 1981); accord Finkel, 577 F.3d at 87.

"When deciding a [defendant's liability on a] motion for default judgment, courts have

. . . looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]"

Chanel, Inc. v. Louis, No. 06-CV-5924 (ARR)(JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec. 7,

2009).   On a Rule 12(b)(6) motion, courts follow a two-prong approach.   See Ashcroft v.

Iqbal, 556 U.S. 662, 677-80 (2009).   First, the complaint's conclusions of law and formulaic

recitations of elements of a cause of action should be disregarded.   See id. at 678.   Second,

where the complaint contains "well-pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to an entitlement to relief."   Id. at

679.

7

## II.     Liability

By its third-party claims, B&A, as assignee of Cavalry, alleges that Fleet and Heineman

breached the terms of the Amendment to the Asset Sale Agreement, which provided for the

third-party defendants to pay a portion of the costs and liability in this action.    B&A

acknowledges that the split liability provision contained in the Amendment constitutes a

contractual indemnification of FLSA and NYLL claims.    See B&A Resp. at 1-2.

In Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132 (2d Cir. 1999), after the U.S. Labor

Secretary sued an employer entity and its 50-percent shareholder under the FLSA, the

shareholder brought an indemnification claim against his "co-employers": a co-shareholder and

the vice president of the company.    See id. at 143.    The Second Circuit held that there is no

right to contribution or indemnification for employers found liable under the FLSA.[4]    The

Court of Appeals relied on the Supreme Court's decision in Northwest Airlines, Inc. v.

Transport Workers Union, 451 U.S. 77 (1981), in which it held that there is no right to

contribution in favor of employers under Title VII or the Equal Pay Act.    See id. at 143.

First, the Second Circuit found in Herman that the text of the FLSA does not provide for

contribution or indemnification.    See id. at 144.    Second, the Court concluded that employers

are not members of the class for whose benefit the FLSA was enacted (i.e., employees).    See

id.    Third, the Court recognized that the FLSA is a comprehensive remedial scheme that

strongly weighs against "judicially engrafting additional remedies," such as contribution and

---

[4] In Scalia v. Employer Solutions Staffing Group, LLC, 951 F.3d 1097, 1105 (9th Cir. 2020), the Ninth Circuit recently "join[ed] the Second Circuit in holding that the FSLA does not imply a right to contribution or indemnification for liable employers[,]" and "decline[d] to make new federal common law that recognizes those rights."

indemnification.   See id.   Fourth, as the Circuit observed, the legislative history of the statute

is silent with respect to a right to contribution or indemnification.   See id.   The Second

Circuit in Herman similarly rejected the co-employer's attempt to sue for contribution or

indemnification under New York law.   See id.

District courts in this Circuit have since extended Herman's prohibition to contractual

indemnification claims for liability under the FLSA and the NYLL.   See Garcia v. Cloister

Apt[.] Corp., No. 16 CV 5542-LTS, 2018 WL 1353274, at *2 (S.D.N.Y. Mar. 15, 2018)

(dismissing contractual indemnification cross-claim for liability under the FLSA and NYLL);

Goodman v. Port Auth. of N.Y. & N.J., 850 F.Supp.2d 363, 389 (S.D.N.Y. 2012) (same);

Gustafson v. Bell Atl. Corp., 171 F.Supp.2d 311, 328 & n.8 (S.D.N.Y. 2001) (dismissing, on

summary judgment, third-party claims for contractual indemnification under the FLSA and

NYLL); see also Mitropoulos v. 401 Sunrise Corp., 17-cv-3618 (ENV) (SLT), 2019 WL

24523848, at *1 (E.D.N.Y. June 12, 2019) (ruling, in action under FLSA and NYLL, that

individual defendant who had not filed for bankruptcy protection "is legally foreclosed from

seeking indemnification" from a co-defendant entity/employer who had filed for Chapter 11

protection); Robinson v. Great Performances Artists as Waitresses, Inc., Nos. 152469/2018,

595973/2018, 2020 WL 1987846, at *7 (N.Y. Sup. Ct., N.Y. Cty. Apr. 27, 2020) (dismissing

third-party complaint seeking contractual indemnification of NYLL claims).   Across the

country, the vast majority of other district courts to have addressed the issue have followed

Herman's reasoning in concluding that contractual indemnity provisions for FLSA claims are

unenforceable.   See Scalia v. MICA Contracting, LLC, Case No. 1:18-cv-590, 2019 WL

6711616, at *3-4 (S.D. Ohio Dec. 10, 2019); Perez v. TBG Logistics LLC, No. CV-16-02916-

PHX-ROS, 2016 WL 10919966, at *3 (D. Ariz. Dec. 16, 2016); McDougal v. G & S Tobacco

Dealers, L.L.C., 712 F.Supp.2d 488, 497-98 (N.D. W. Va. 2010); Finke v. Kirtland Cmty.

Coll. Bd. of Trs., 359 F.Supp.2d 593, 599 (E.D. Mich. 2005).   These holdings recognize the

strong underpinnings of the Court's reasoning in Herman.   As one court stated:

> [A]llowing [third-party plaintiffs] to obtain indemnification from [a third-party
> defendant] contradicts the policies of the FLSA.   As *Herman* explains, "the
> [FLSA] was designed to regulate the conduct of employers for the benefit of
> employees . . . ."   [172 F.3d] at 144.   Allowing indemnification in cases such
> as this would permit employers to contract away their obligations under the
> FLSA, a result that flouts the purpose of the statute.

Gustafson, 171 F.Supp.2d at 328.   In other words, to permit an employer to escape liability

for FLSA violations would weaken an employer's incentive to comply with the FLSA.   See

Goodman, 850 F.Supp.2d at 389; Local 1035, Int'l Bhd. of Teamsters v. Pepsi Allied Bros.,

Inc., 99 F.Supp.2d 219, 221 (D. Conn. 2000); accord MICA Contracting, 2019 WL 6711616,

at *3-4; Perez, 2016 WL 10919966, at *3.

To be sure, as B&A observes, several opinions in this Circuit have discussed contractual

indemnification claims involving employers, without addressing or even citing Herman, which

the parties apparently never even raised.   See B&A Resp. at 3-4 (citing Paganas v. Total

Maint. Solution, LLC, 220 F.Supp.3d 247, 263 (E.D.N.Y. 2016); Bogosian v. All American

Concessions, No. 06-cv-1633 (RRM)(RML), 2011 WL 4460362, at *3-4 (E.D.N.Y. Sept. 26,

2011); Amaya v. Garden City Irrigation, Inc., No. 03-cv-2814 (FB)(RML), 2011 WL 564721,

at *5 (E.D.N.Y. Feb. 15, 2011)).[5]   Admittedly, Herman is silent on whether its holding

---

[5] Contrary to B&A's assertion, the court in Paganas did not enforce a claim for contractual indemnification; it granted the third-party defendants' motion for summary judgment dismissing that claim.   The decision in Paganas was thereafter vacated by the Second Circuit on other grounds.   See 726 F.App'x 851 (2d Cir. 2018).

extends to contractual indemnification claims.   Nevertheless, while Herman does not directly

address indemnification agreements, the opinion's reasoning applies with equal force to the

right of an employer to enter into a contract for indemnification from liability.   See Garcia,

2018 WL 1353274, at *2; Gustafson, 171 F.Supp.2d at 328.   That is, employers should not be

permitted to contract away the consequences of violating the "statutorily mandated and

unwaivable overtime pay requirements of the FLSA[.]"   Goodman, 850 F.Supp.2d at 389

(quoting Pepsi Allied, 99 F.Supp.2d at 221).   Enforcing contractual indemnification claims

would be inconsistent with Herman's focus on maintaining the employer's incentive to comply

with the FLSA.

B&A argues that to allow a third party-defendant "to avoid liability that it expressly

agreed to assume pursuant to a contract would be harmful to *employees* as it would limit

employees' opportunity to recover against a joint employer."   See B&A Resp. at 3 (emphasis

added).   This Court disagrees.   First, there has been no allegation in this action, either by

plaintiffs or Cavalry/B&A, that third-party defendants were plaintiffs' employers; had they been

plaintiffs' employers, they presumably would have been added as defendants.   Second, since

the class plaintiffs have already been paid for their claims, see id. at 9, their interests would be

unaffected by B&A's enforcement of Cavalry's rights against third-party defendants pursuant to

the terms of the Amendment.   For plaintiffs' purposes, it is sufficient, as B&A recognizes, that

"Cavalry remains obligated to satisfy the judgment obtained against it by the class members."

Id.   Therefore, B&A's argument that enforcement of the indemnification agreement would

benefit the class members is a red herring.   On the contrary, creating precedent by which a

FLSA employer could escape liability would undermine the statute's remedial scheme.

11

Seeking to sustain its third-party claim in the instant case, B&A relies most heavily on

Judge Block's 2011 decision in a FLSA/NYLL case, Amaya v. Garden City Irrigation, Inc.,

2011 WL 564721, at *5 (E.D.N.Y. Feb. 15, 2011), which granted summary judgment

enforcing a contractual indemnity clause in favor of a third-party bonding company against a

defendant-employer.   See B&A Resp. at 4-5.   However, an examination of the circumstances

and claims in Amaya demonstrates why that decision has no application here.   In Amaya, the

plaintiff-employees brought claims under the FLSA and NYLL against their employer, as well

as against several of the sureties who had provided payment and performance bonds on the

defendant employer's projects.   The sureties funded the settlements of the employees' claims

on their bonds and then asserted contractual indemnification claims against the employer.

Ironically, the granting of summary judgment in favor of the sureties on their indemnification

claim against the employer brought about a result that is the opposite of that sought by B&A

here: there, enforcement of the indemnification agreement prevented the employer from

escaping liability for violations of the FLSA and NYLL.   Simply put, the contractual

indemnification claim in Amaya was consistent with the purposes of the wage statutes.[6]

B&A's theory of liability in this case misconstrues the district court's decision in

Gustafson, on which many courts in this Circuit and elsewhere have relied in dismissing

contractual indemnification claims for FLSA violations.   According to B&A, Gustafson is

inapplicable here because it "specifically and solely deals with an employer attempting to avoid

---

[6] In another portion of his opinion in Amaya, Judge Block denied a motion for partial summary judgment, filed by a former shareholder of the employer corporation in connection with his fourth-party state law claim for contractual indemnification against the corporation and its principal shareholder.   See 2011 WL 564721, at *7. Significantly, the fourth-party defendants did not move to dismiss the indemnification claim, nor did they cite to or otherwise raise any argument based on Herman.   See 2011 WL 564721, at *5-7.

liability from the claims of a putative employee on the basis that the employee signed an

agreement indemnifying the employer from liability from all potential wage claims." See

B&A Resp. at 5.   In Gustafson, the plaintiff, who had been classified by defendant Bell

Atlantic as an independent contractor working for his own corporation (of which he was the sole

owner, officer and employee), sued Bell Atlantic for failure to pay overtime.   Bell Atlantic

then asserted a contractual indemnification claim against the plaintiff's company, based on an

agreement that provided that plaintiff's company would indemnify Bell Atlantic for suits arising

out of the performance of services for Bell Atlantic.   B&A's narrow interpretation of

Gustafson is belied by its plain language.   In dismissing the indemnification claim, the court

specifically stated that, "[e]ven assuming [plaintiff's company] were found culpable for FLSA

[or NYLL] violations as plaintiff's 'co-employer,' the right to indemnification is still absent."

Gustafson, 171 F.Supp.2d at 328 & n.8.   In other words, it is the status of the party seeking to

avoid liability as an employer that is determinative, not the status of the party from whom the

employer seeks indemnification.   Indeed, the Second Circuit expressly noted in Herman that

the status of the party seeking indemnification "*as an employer* places him outside of [the

FLSA's] intended protection, regardless of the status of the party from whom he seeks

contribution."   Herman, 172 F.3d at 143 (emphasis added).   Here, B&A "stands in the

shoes" of plaintiffs' employer, Cavalry, in seeking indemnification from Fleet and its owner,

who were not plaintiffs' employers.

B&A further argues that the District Court has already endorsed its third-party claims to

the extent that it "is arguably within the law of the case doctrine."   See B&A Resp. at 5-6.

But "[t]he doctrine of law of the case comes into play only with respect to issues previously

determined." Quern v. Jordan, 440 U.S. 332, 347 n.18 (1979). Here, Judge Block

expressly reserved decision on the merits in response to B&A's proposed plan to prosecute

third-party claims against Fleet and Heineman. See 10/29/19 Order (granting leave to file

third-party complaint but withholding "any opinion as to the merits of the claim"). Moreover,

had the District Court already determined the issue of liability, there would have been no reason

to refer the issue to the undersigned to report and recommend.

Even assuming *arguendo* that third-party defendants here were joint employers with

Cavalry, B&A is incorrect in suggesting that no court in the Second Circuit has addressed the

issue of contractual indemnification between joint employers in FLSA actions. See B&A

Resp. at 7. On the contrary, as discussed above, the court in Gustafson expressly assumed that

the plaintiff's company was a joint employer in ruling that the defendant could not enforce an

indemnification clause against the plaintiff's company and thereby avoid FLSA or NYLL

liability. See 171 F.Supp.2d at 328.

In addition, in Garcia, the court held that, as a matter of law, a joint employer could not

contract out of liability in favor of another joint employer. See 2018 WL 1353274, at * 2.

There, several defendant employers brought a contractual indemnification claim for FLSA and

NYLL wage-and-hour violations against a co-defendant joint employer. See id. The court

applied the rationale of Herman in granting a motion to dismiss the indemnification cross-claim,

noting that courts in this Circuit have "extended its reasoning to contractual indemnification

claims." Id.

Similarly, in Goodman, the Port Authority asserted a cross-claim for contractual

indemnification for FLSA and NYLL claims against its co-defendant joint employer. The

court granted the co-defendant's motion for judgment on the pleadings dismissing Port Authority's cross-claim: "[A] holding that the indemnification clause is enforceable would indeed mean that employers would have little reason to be concerned over . . . [compliance] with the statutorily mandated and unwaivable overtime pay requirements of the FLSA, knowing full well that if they are later found to have violated such requirements, such employers would be totally compensated for any injuries resulting from such action."   850 F.Supp.2d at 389 (internal quotation marks and citation omitted).

Finally, this Court is not persuaded by the handful of out-of-circuit cases relied on by B&A, in which courts declined to dismiss contractual indemnification claims.   In Haynes v. Ocean Hospitalities, Inc., in contrast to this case, the employee-plaintiffs alleged that the two groups of defendants – who had cross-claimed for contractual indemnification – were joint employers, but the court concluded that there were disputed issues of fact regarding the joint employment relationship between the defendants.   See Case No. 5:11-CV-250-Oc-32PRL, 2013 WL 12358481, at *2, *7 (M.D. Fla. Jan. 14, 2013), adopted in part, 2013 WL 12358482 (M.D. Fla. Feb. 11, 2003).   Importantly, in Haynes, the court expressly held that if the co-defendants were not joint employers, then the sole employer "would be precluded from seeking indemnity" from the non-employer defendant, as it would be "repugnant to the FLSA to allow a sole employer to essentially avoid FLSA liability . . . by putting the ultimate risk of a non-employer third party."   Id. at *7; see id. at *5 (indemnity provision is "void" if party its asserted against is not an employer).

In another out-of-circuit opinion cited by B&A, Varnell, Struck & Assocs. Inc. v. Lowe's Companies, Inc., Lowe's asserted claims for contractual indemnification against a

vendor that provided in-store services. See Nos. 5:06cv068, 5:07cv104, 2008 WL 1820830 (W.D.N.C. Apr. 21, 2008). There, both parties to the indemnification agreement were alleged by plaintiff-employees in a separate class action lawsuit to be joint employers for FLSA purposes. See id. at *4. Here, in contrast, granting the motion for default judgment would invite an employer-defendant to shift liability onto a third party – a result contrary to the purposes of the wage-and-hour statutes and to the spirit of Herman and its progeny.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that B&A's motion for default judgment be denied and that its claim for breach of contract be dismissed as an unenforceable contractual indemnification claim in a wage-and-hour case.

Any objections to this Report and Recommendation must be filed with the Judge Block on or before August 25, 2020. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

B&A is directed to promptly serve copies of this Report and Recommendation on third-party defendants and file proof of service.

**SO ORDERED.**

**Dated:     Brooklyn, New York**
**          August 11, 2020**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**

16