**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**DEREK COPPER, et al.,**

                      **Plaintiffs,**           **REPORT AND**
                                                 **RECOMMENDATION**
         -against-

                                                 **14-CV-3676 (FB)**
**CAVALRY STAFFING, LLC, et al.,**

                      **Defendants.**
-----------------------------------------------------------------x
**BORRELLI & ASSOCIATES, P.L.L.C.,**

                      **Third-party Plaintiff,**

        -against-

**FLEET STAFF, INC. and RONALD E.**
**HEINEMAN,**

                      **Third-party Defendants.**
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

        On April 2, 2020, third-party plaintiff Borrelli & Associates, P.L.L.C. ("B&A") filed a motion for a default judgment against third-party defendants Fleet Staff, Inc. ("Fleet") and Ronald E. Heineman ("Heineman") (collectively, "third-party defendants"). See Motion for Default Judgment (Apr. 2, 2020), Electronic Case Filing ("ECF") Docket Entry ("DE") #280. Following litigation concerning the viability of B&A's third-party claim for contractual indemnification in a wage-and-hour case, the Honorable Frederic Block, the District Judge to whom this case is assigned, sustained the claim and referred B&A's motion for default judgment to the undersigned magistrate judge to report and recommend. See Memorandum and Order (Mar. 16, 2021) at 6, DE #294. For the reasons that follow, this Court recommends

that B&A's motion for a default judgment be granted, and that B&A be awarded damages as set forth below.

## BACKGROUND

Fleet and defendant Cavalry Staffing, Inc. ("Cavalry") are staffing companies that placed workers as service agents and service agent supervisors at Enterprise Rent-A-Car locations throughout New York state. See Third Party Complaint (Dec. 5, 2019) ("Third Party Compl.") ¶ 11, DE #271. On February 7, 2014, Cavalry sold all of its assets to Fleet pursuant to a Purchase Agreement, which provided that Cavalry became a "division of Fleetstaff." See id. ¶ 12; Purchase Agreement ¶ 2, DE #280-6. Under the terms of the Purchase Agreement, David Stanley, the former President and sole shareholder of Cavalry, became the Executive Vice President of the new Cavalry division at Fleet. See Third Party Compl. ¶ 14; Purchase Agreement ¶ 3. Third-party defendant Heineman, as President of Fleet, signed the Agreement on Fleet's behalf. See Purchase Agreement at p. 4.

On June 11, 2014, plaintiffs filed the instant collective action under the Fair Labor Standards Act ("FLSA") and putative class action under New York Labor Law against Cavalry and Enterprise Holdings, Inc. (collectively, "defendants"),[1] for failure to pay overtime and minimum wages to nonmanagerial employees. See Complaint (June 11, 2014), DE #1. On September 25, 2015, Judge Block granted defendants' motion to dismiss the minimum wage claims, denied the motion to dismiss the overtime claims, and conditionally certified a FLSA

---

[1] The Complaint alleged that Enterprise Holdings, Inc. owned and operated several Enterprise Rent-A-Car locations throughout New York State. See Complaint (June 11, 2014) ¶ 11, DE #1. The original pleading also named an individual defendant, a Cavalry employee who acted as plaintiffs' supervisor. See id. ¶ 13. Amended pleadings filed later that year added and then dropped a second individual defendant. See Amended Complaint (Oct. 8, 2014), DE #37; Second Amended Complaint (Dec. 12, 2014), DE #50.

2

collective action.  See Memorandum & Order (Sept. 25, 2015), DE #78.

On December 14, 2015, while this litigation was ongoing, Cavalry and Fleet executed an amendment to the Purchase Agreement.  See Third Party Compl. ¶ 16.  Pursuant to the amendment, the parties identified outstanding obligations owed by Cavalry and incurred prior to the asset sale, including potential liability from the instant lawsuit.  See Amendment to Purchase Agreement (the "Amendment"), DE #280-7.[2]  Relevant to this action, the Amendment provides that:

> The parties specifically agree upon a split liability as it relates to a case pending in the US District Court Eastern District of New York (1:14-cv-03676-FB-CLP Copper et al v. Cavalry Staffing, LLC et al). This shall be so for all costs incurred to date and those going forward. Buyer will be entitled to offset for past costs up to the effective date of this Amendment as stated above, and for future Earnout payments based upon the 50/50 split of costs associated with that lawsuit.

Amendment ¶ 2.  Heineman signed the agreement on behalf of Fleet.  See Amendment at p. 3.

On October 18, 2016, following a private mediation, plaintiffs moved for preliminary approval of a collective and class settlement, in the maximum amount of $875,000, to be fully funded by Cavalry.  See Motion to Certify Class (Oct. 18, 2016), DE #250; Settlement Agreement and Release (the "Settlement Agreement") ¶ 2.7, DE #250-3.  Judge Block granted preliminary approval of the settlement on September 8, 2017.  See Order (Sept. 8, 2017), DE #252.  On January 9, 2018, plaintiffs moved for final approval of the class settlement.  See Motion to Certify Class (Jan. 9, 2018), DE #253.

Shortly thereafter, on February 5, 2018, counsel for Cavalry, Fisher Phillips, LLP

---

[2] The Amendment is also attached to the Third Party Complaint.  See DE #271-1.

("Fisher Phillips"), moved to substitute another firm as counsel because the Fisher Phillips firm had "a potential conflict of interest in continued representation of Cavalry as a result of Fisher Philip's representation of another client whose interests are adverse to Cavalry's interests" – an apparent reference to the firm's representation of Fleet. See Third Party Compl. ¶ 20; Affidavit of Kathleen McLeod Caminiti (Feb. 5, 2018) ¶ 6, DE #254-2; Declaration of Jeffrey R. Maguire, Esq. (Feb. 8, 2019) ("2/8/19 Maguire Decl.") ¶ 8, DE #261-5. The substitution was approved by Judge Block. See Minute Entry (Feb. 9, 2018); Electronic Order (Feb. 9, 2018).

Days later, on February 12, 2018, Judge Block approved the settlement and entered final judgment. See Order (Feb. 12, 2018), DE #255. Under the Settlement Agreement, Cavalry was required to pay $459,816.17 in total by April 13, 2018. See 2/8/19 Maguire Decl. ¶ 5; see also Third Party Compl. ¶ 21; Declaration of Jeffrey R. Maguire (Apr. 2, 2020) ("4/2/20 Maguire Decl.") ¶ 18, DE #280-1. On April 16, 2018, after the case was closed, Cavalry notified the Court that it was unable to make a payment to fund the settlement on April 13, 2018, and requested a conference. See Letter requesting conference (Apr. 16, 2018), DE #256. In response, plaintiffs advised Judge Block that in addition to the April 13th missed final payment, and unbeknownst to plaintiffs' counsel at the time, Cavalry had also missed the initial deposit of $300,000 to fund the settlement, due on December 11, 2017, prior to the Court's final approval of the settlement. See Letter Motion for Pre Motion Conference (Apr. 16, 2018) at 2, DE #257.

On June 28, 2018, Cavalry deposited $230,000.00 – "approximately 50% of the total amount due" - into the settlement fund. See Third Party Compl. ¶ 22; 4/2/20 Maguire Decl.

¶ 19.  At a conference held before Judge Block on August 29, 2018, plaintiffs proposed that the $230,000.00 in the settlement fund be distributed to the class members to pay their claims in full, and that the remaining amount would be used to pay counsel's litigation costs, a portion of attorneys' fees, and a portion of the administration fees.[3]  See 2/8/19 Maguire Decl. ¶ 7.  Judge Block approved that distribution.  See id.; Minute Entry dated 8/29/18.

On February 8, 2019, plaintiffs filed a post-judgment enforcement motion to compel Fleet, as a non-party that is in possession of money in which the judgment debtor (Cavalry) has an interest, to turn over to plaintiffs the outstanding balance due on the settlement, pursuant to the Amendment to the Purchase Agreement.  See Motion to Enforce Judgment (Feb. 8, 2019), DE #261.  Plaintiffs' counsel noted in the motion that prior to Cavalry's default under the Settlement Agreement, counsel was never informed that Cavalry had sold its assets to Fleet, that Fleet and Cavalry had agreed to split the liability in this action, or that Fisher Phillips represented both Fleet and Cavalry.  See 2/8/19 Maguire Decl. ¶¶ 8, 9.

On September 26, 2019, Judge Block approved the parties' agreement to assign to B&A Cavalry's breach of contract claim against Fleet (for breach of the Amendment), "thereby permitting B&A to stand in the shoes of Cavalry with respect to Fleet . . . ."  4/2/20 Maguire Decl. ¶ 21; see Order (Sept. 26, 2019) at 2, DE #268.

On December 5, 2019, B&A, "stand[ing] in the shoes of Cavalry[,]" Third Party Compl. ¶ 2, filed the Third Party Complaint, in which it alleges that Fleet and its owner

---

[3] However, because the settlement administrator had miscalculated the amount owed, $5,181.84 was later paid back by B&A to the settlement administrator to satisfy the amount due to participating class members.  See 2/8/19 Maguire Decl. ¶ 7; Order (Sept. 26, 2019) at 2, DE #268.

(Heineman) breached the terms of the Amendment to the Purchase Agreement by failing to pay Cavalry or the claims administrator $229,816.77, the remaining balance owed pursuant to the Settlement Agreement. On December 20, 2019, B&A effected service on Fleet through the New York Secretary of State. See Summons Returned Executed (Jan. 2, 2020), DE #275. B&A served Heineman through a person of suitable age and discretion at his residence and completed service by mailing a copy of the summons and complaint to that address. See Summons Returned Executed (Dec. 23, 2019), DE #274. Following third-party defendants' failure to appear or otherwise defend, B&A moved for entry of a default judgment, and Judge Block referred the motion to the undersigned to report and recommend on both liability and damages. See Electronic Order Referring (Apr. 3, 2020).

By Report and Recommendation dated August 11, 2020, this Court recommended that the District Court deny B&A's motion for a default judgment against third-party defendants as "an unenforceable contractual indemnification claim in a wage-and-hour case." See Report and Recommendations (Aug. 11, 2020) at 16, DE #286. On March 16, 2021, Judge Block sustained B&A's objections to the Report and Recommendation and recommitted the matter to this Court for further proceedings on the motion for default judgment. See 3/16/21 M&O at 6.

## DISCUSSION

### I.  Default Judgment Standard

After the Clerk of the District Court enters a Certificate of Default, the District Court may, on a plaintiff's application, enter a default judgment where a defendant "has failed to plead or otherwise defend" an action. See Fed R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y. Local Civ. R. 55.2(b). A defendant's default constitutes an admission of

all well-pleaded factual allegations in the complaint except those relating to damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). If the allegations properly state a claim, the plaintiff must then establish damages. See Greyhound Exhibitgroup, 973 F.2d at 158. A pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment, the factual allegations in the complaint must themselves be sufficient to establish a right to relief. See City of New York v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009) (district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"); Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966, at *4 (E.D.N.Y. Mar. 18, 2016), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016). "When deciding a [defendant's liability on a] motion for default judgment, courts have also looked to recent precedent with regard to surviving a Rule 12(b)(6) motion to dismiss[.]" Chanel, Inc. v. Louis, No. 06-cv-5924 (ARR) (JO), 2009 WL 4639674, *3 (E.D.N.Y. Dec. 7, 2009).

It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether or not to hold an evidentiary hearing. See Tamarin v. Adam Caterers, Inc., 13 F.3d 51, 53-54 (2d Cir. 1993); Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991); Fed. R. Civ. P. 55(b)(2). The moving party is entitled to all reasonable inferences from the evidence it offers. See Romanowicz, 577 F.3d at 84; Au Bon Pain, 653 F.2d at 65.

**II.   Liability**

By its third-party claims, B&A, as assignee of Cavalry, alleges that Fleet breached the

7

terms of the Amendment to the Purchase Agreement, which required that Fleet pay a portion of the costs and liability in this action.

### A. Breach of Contract Against Fleet

The elements of a cause of action for breach of contract under New York law[4] are: (1) the existence of a contract; (2) performance of a contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach. See Orlander v. Staples, Inc., 802 F.3d 289, 294 (2d Cir. 2015); Beautiful Jewellers Private Ltd. v. Tiffany & Co., 438 F.App'x 20, 21-22 (2d Cir. 2011).

As to the first element – the existence of a contract – B&A alleges that Fleet and Cavalry entered into the Purchase Agreement, in which Cavalry agreed to sell all of its assets to Fleet. See Third Party Compl. ¶ 12. Those parties also executed the Amendment to the Purchase Agreement, which provides that "[t]he parties specifically agree upon a split liability" with respect to the instant litigation, in exchange for "a new Earnout structure" to compensate for and offset Fleet's outstanding obligations relating to Cavalry's previous operations. See id. ¶ 16; Amendment ¶ 2. B&A has adequately alleged an enforceable contract between Fleet and Cavalry.

---

[4] Because, as B&A notes, see 4/2/20 Maguire Decl. ¶ 25, the requirements of a breach of contract claim under the laws of New York and the other potentially applicable jurisdiction, Kentucky, are substantially similar, there is no substantive conflict between Kentucky and New York law, see Chem Rx Pharm. Servs., LLC v. Saratoga Care & Rehab. LLC, 1:19-CV-1312 (GTS/CFH), 2020 WL 4047893, at *3 (N.D.N.Y. July 20, 2020); Arakelian v. Omnicare, Inc., 735 F.Supp.2d 22, 30 n.5 (S.D.N.Y. 2010). In the absence of such a conflict, this Court bypasses the choice-of-law analysis and applies New York law. See Copperwood Cap. LLC v. JAG Staffing & Consulting Servs., Inc., No. 20-CV-1406 (EK) (RER), 2021 WL 919871, at *2 (E.D.N.Y. Feb. 10, 2021), adopted, 2021 WL 918312 (E.D.N.Y. Mar. 10, 2021); Continental Cas. Co. v. Contest Promotions NY, LLC, 15-CV-501 (MKB), 2016 WL 1255726, at *2 (E.D.N.Y. Mar. 28, 2016); Blue Ridge Farms, Inc. v. Crown Equip. Corp., No. 01 CV 8460SJ, 2005 WL 755756, at *9 (E.D.N.Y. Mar. 28, 2005).

B&A has also sufficiently pled that Cavalry performed its contractual obligations by transferring the operations of its business to Fleet, which continued to serve in New York as the staffing company that provided workers to Enterprise-Rent-A-Car, and which employed David Stanley (Cavalry's former president and sole shareholder) as Executive Vice President of Fleet. See id. ¶¶ 12, 14. B&A further alleges that Fleet breached its agreement with Cavalry by failing to pay Cavalry, or the claims administrator, the balance owed of $229,816.77, representing Fleet's share of the split liability for the settlement reached in this action. See id. ¶ 23. As a result of this breach, B&A, standing in the shoes of Cavalry, is owed damages for Fleet's share of the outstanding liability.

    B.    Piercing the Corporate Veil Against Heineman

Although Heineman did not sign the Purchase Agreement or the Amendment in his personal capacity, B&A contends that Fleet's corporate veil should be pierced and that Heineman should be held jointly and severally liable for breach of the contract. See 4/2/20 Maguire Decl. ¶¶ 33-35.

Under New York law,[5] the corporate veil will not be pierced unless the individual in question has "'exercised complete domination over the corporation with respect to the transaction at issue,'" and the individual's domination "'was used to commit a fraud or wrong that injured the party seeking to pierce the veil.'" Sentry Ins. v. Brand Mgmt. Inc., 120 F.Supp.3d 277, 286 (E.D.N.Y. 2015) (quoting Liberty Synergistics, Inc. v. Mircroflo, 50

---

[5] Although the veil-piercing analysis is generally governed by the place of incorporation, Kentucky law provides a similar analysis to New York law. See 4/2/20 Maguire Decl. ¶ 31 (citing Sudamax Industria e Comerico de Cigarros, Ltda v. Buttes & Ashes, Inc., 516 F.Supp.2d 841, 847 (W.D. Ky. Sept. 26, 2007)). In the absence of a conflict, a federal court in New York applies New York law. See Copperwood Cap., 2021 WL 919871, at *2.

F.Supp.3d 267, 296 (E.D.N.Y. 2014), aff'd, 720 F.App'x 639 (2d Cir. 2017)); see MAG Portfolio Consult, GMBH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 63 (2d Cir. 2001); Am. Fuel Corp. v. Utah Energy Dev. Co., Inc., 122 F.3d 130, 134 (2d Cir. 1997); Morris v. N.Y. State Dep't of Taxation & Fin., 82 N.Y.2d 135, 141 (1993).  In conducting a veil-piercing analysis, courts consider factors such as the following: "(1) the absence of the formalities which are part and parcel of normal corporate existence, *i.e.*, the issuance of stock, the election of directors, the keeping of corporate records, etc., (2) inadequate capitalization, (3) personal use of corporate funds, and (4) the perpetration of fraud by means of the corporate vehicle." Walter E. Heller & Co. v. Video Innovations, Inc., 730 F.2d 50, 53 (2d Cir.1984); see also Ferrara v. Oakfield Leasing Inc., 904 F.Supp.2d 249, 268 (E.D.N.Y. 2012).  "While conclusory allegations of shareholder domination or control are insufficient to survive a motion to dismiss, 'veil piercing is a fact-laden claim,' so 'a complaint seeking to pierce the corporate veil should not be dismissed unless it "is totally devoid of solid, nonconclusory allegations."'" Cookware Co. (USA), LLC v. Austin, 15 Civ. 5796 (DAB), 2017 WL 5198388, at *3 (S.D.N.Y. Oct. 26, 2017) (quoting Robles v. Copstat Sec., Inc., No. 08 Civ. 9572(SAS), 2009 WL 4403188, at *2 (S.D.N.Y. Dec. 2, 2009)).

Plaintiff alleges that Heineman was the owner and Chief Executive Officer of Fleet. See Third Party Compl. ¶ 10.  In that capacity, Heineman exercised complete control over Fleet, transacted all of the corporate entity's business at his sole discretion, and intermingled the funds of the corporation with his personal funds.  See id.  Importantly, B&A further alleges that Heineman alone signed the Purchase Agreement and Amendment on behalf of Fleet, so as to acquire all of Cavalry's assets, and then refused to pay the money owed to Cavalry under the

Amendment and changed his staffing company's name to avoid liability. See id. Based on these allegations in the Third Party Complaint, which are deemed admitted, the Court concludes that B&A has adequately alleged the elements necessary to pierce the corporate veil,[6] and respectfully recommends that third-party defendant Heineman be held jointly and severally liable for Fleet's breach of its obligations under the Amendment. See, e.g., Badian v. Elliott, 165 F.App'x 886, 889-90 (2d Cir. 2006) (affirming entry of default against individual defendant on veil-piercing theory, where individual was alleged to have transferred assets of the company that he dominated, in order to escape company's contractual obligations); McKnight as Tr. of Stacia L. McKnight Revocable Tr. v. 65 Dune Rd. LLC, 19-CV-4172 (MKB), 2020 WL 9816015, at *15 (E.D.N.Y. Nov. 16, 2020) (denying motion to dismiss veil-piercing claim against contract signatory who was alleged to have known of and participated in subject fraud); Foley v. Wilson, No. 18-CV-504 (RA), 2020 WL 30338, at *5 (S.D.N.Y. Jan. 2, 2020) (granting default judgment on breach of contract claim, on a theory of "alter ego" liability against individual defendant, who was listed as "manager" of corporate defendant, was an authorized agent for service of process and shared a mailbox and address with corporation); Nicholson v. Touchbase Glob. Servs., Inc., No. 18-CV-0426 (ADS)(GRB), 2019 WL 3716460, at *1-2 (E.D.N.Y. Feb. 26, 2019) (in connection with a motion for default judgment, allegations that individual defendant personally dominated and controlled corporations,

---

[6] The Court observes that here, as in Trustees of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co., Inc., 13-CV-2779 (FB)(CLP), 2014 WL 1622098, at *6 (E.D.N.Y. Apr. 22, 2014), the defaulting parties' failure to appear deprived the third-party plaintiff of relevant information concerning veil piercing, which is solely within the defaulting parties' control, see also Cookware Co., 2017 WL 5198388, at *3 (recognizing that "information that goes more directly to the question of veil piercing, such as corporate records, is squarely within the control of [defendants].").

comingled personal and corporate accounts, and utilized an identical corporate name to avoid corporate obligations, were sufficient to sustain liability through veil-piercing), adopted, 2019 WL 3716027 (E.D.N.Y. Mar. 22, 2019).

### III. Compensatory Damages

Though a defendant (or here, third-party defendant), by defaulting, admits all well-pleaded allegations pertaining to liability, courts have discretion to determine whether (third-party) plaintiffs have substantiated their damages request. See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC, 779 F.3d 182, 189 (2d Cir. 2015).

Here, B&A seeks to recover a total of $229,816.77 in compensatory damages: the amount of the final judgment of $459,816.77, minus the amount paid by Cavalry, $230,000. See 4/2/20 Maguire Decl. ¶ 37.

Under New York law, damages for breach of contract "attempt[ ] to secure to the injured party the benefit of his bargain, subject to the limitations that the injury . . . was foreseeable, and that the amount of damages claimed be measurable with a reasonable degree of certainty and, of course, adequately proven." Terwilliger v. Terwilliger, 206 F.3d 240, 248 (2d Cir. 2000) (quoting Freund v. Washington Square Press, Inc., 34 N.Y.2d 379, 382 (1974)). "[F]undamental" to this analysis is "that the injured party should not recover more from the breach than he would have gained had the contract been fully performed." Id. (quoting Freund, 34 N.Y.2d at 382).

It is undisputed that Fleet failed to pay $229,816.77, the remaining balance due on the judgment entered against Cavalry. Accordingly, the Court respectfully recommends that B&A

be awarded $229,816.77, the balance due.

## IV. Interest

B&A also seeks awards of pre- and post-judgment interest. See 4/2/20 Maguire Decl. ¶¶ 29, 38.

"Under New York law,[7] 'prejudgment interest is normally recoverable as a matter of right in an action at law for breach of contract.'" Graham v. James, 144 F.3d 229, 239 (2d Cir. 1998) (quoting Adams v. Lindblad Travel, Inc., 730 F.2d 89, 93 (2d Cir. 1984)); see N.Y. C.P.L.R. § 5001(a). Pursuant to New York law, pre-judgment interest is computed at a rate of nine percent per year. See N.Y. C.P.L.R. § 5004. Although B&A does not propose a specific starting date for the accrual of pre-judgment interest, B&A alleges that it deposited $230,000 with the claims administrator on June 28, 2019. See 4/2/20 Maguire Decl. ¶¶ 19, 28. Accordingly, this Court, in its discretion, recommends that pre-judgment interest be calculated from June 28, 2019 at the rate of nine percent per annum on the recommended compensatory damages award of $229,816.77, through the date of entry of final judgment.

As to post-judgment interest, which is governed by federal statute, 28 U.S.C. § 1961(a), see Schipani v. McLeod, 541 F.3d 158, 165 (2d Cir. 2008), "an award of post-judgment interest is mandatory," id., and is calculated at the statutory rate prescribed by 28 U.S.C. § 1961(a), see Plaza Motors of Brooklyn, Inc. v. Rivera, 19-CV-6336 (LDH), 2020 WL 9814102, at *12 (E.D.N.Y. Sept. 17, 2020) (citing Schipani, 541 F.3d at 165). Therefore,

---

[7] "New York choice of law principles dictate that the law of the jurisdiction whose law determined liability controls also the allowance of pre-judgment interest." Master Group Glob. Co., Ltd. v. Toner.Com Inc., 19-CV-6648 (AMD), 2020 WL 5260581, at *11 n.22 (E.D.N.Y. Aug. 10, 2020) (internal quotation and citation omitted), adopted, 2020 WL 5259057 (E.D.N.Y. Sept. 3, 2020). Since the Court has applied New York law to the breach of contract claim, New York law likewise governs the award of pre-judgment interest.

this Court respectfully recommends that B&A be awarded post-judgment interest on its monetary award, to be calculated using the federal rate set forth in 28 U.S.C. § 1961(a), from the date the Clerk of the Court enters judgment in this action until the date of payment.

## CONCLUSION

For the foregoing reasons, this Court respectfully recommends that B&A's motion for default judgment be granted and that B&A be awarded judgment in the amount of $229,816.77, plus pre-judgment interest at the rate of nine percent per annum, from June 28, 2019 through the date of entry of final judgment, and post-judgment interest pursuant to 28 U.S.C. § 1961(a).

Any objections to this Report and Recommendation must be filed with Judge Block on or before August 13, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Caidor v. Onondaga Cty., 517 F.3d 601, 604 (2d Cir. 2008).

B&A is directed to promptly serve copies of this Report and Recommendation on third-party defendants and to file proof of service.

**SO ORDERED.**

**Dated:** **Brooklyn, New York**
**July 27, 2021**

/s/ *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES MAGISTRATE JUDGE**